OPINION OF THE COURT
 

 Titone, J.
 

 Plaintiff, a welder, was allegedly injured in an industrial accident, which, he contends, was caused by the absence of an adequate and properly placed structure or device that would have enabled him safely to perform his work at the elevated job site. The issue presented on these cross appeals taken by the injured plaintiff and the general contractor hired to oversee the work is whether plaintiff, whose injury resulted from back strain rather than a fall, may recover in damages from the general contractor under Labor Law § 200 (1), § 240 (1) or § 241 (6). More specifically, these cross appeals require us to consider whether plaintiffs accident is within the class of hazards contemplated by Labor Law § 240 (1), whether the
 
 *498
 
 specific Industrial Code regulations on which plaintiff relies support a cause of action under Labor Law § 241 (6) and, if not, whether plaintiff’s submissions at this early stage of the litigation are sufficient to satisfy his burden under Labor Law § 200 (1) of showing defendants’ supervision or control over the injury-producing work. Under the circumstances of this case, we hold that plaintiff has no cause of action under sections 240 (1) and 241 (6) of the Labor Law, but that his submissions are sufficient to create triable questions of fact under section 200 (1).
 

 Plaintiff was employed by Bechtel Corporation to perform certain welding tasks at a construction site owned by defendant Curtis-Palmer Hydro-Electric Co. and managed by defendant International Paper Co., the general contractor. Bechtel had been retained by International Paper to do a portion of the construction. According to plaintiff’s allegations, plaintiff was assigned the task of welding a 26- to 30-inch seam near the top of a shaft that was some 40 to 50 feet deep. A temporary platform was placed over the shaft to enable plaintiff to perform this task.
 

 In order to complete his welding job without falling from his perch, plaintiff had to sit at the platform’s edge, extend one leg forward against the top edge of the shaft and stretch forward and down with his upper torso and head to reach the seam that needed welding. Although plaintiff had complained about having to work in this position and had asked his Bechtel supervisor to provide a ladder instead, he was told that he had to complete the welding job from the temporary platform because of time constraints. After working from the platform for some 2 Vi hours, plaintiff experienced difficulty and pain when he attempted to straighten his back. He was unable to stand up straight and was forced to crawl off the platform. Plaintiff was eventually referred to an orthopedic surgeon, but, despite subsequent back surgery, he remains disabled.
 

 Plaintiff commenced the present action against International Paper, Curtis-Palmer and Saratoga Development Corp., Curtis-Palmer’s general partner, alleging causes of action under Labor Law § 200 (1), § 240 (1) and § 241 (6). Following limited discovery, defendant International Paper moved for summary judgment dismissing plaintiff’s three causes of action, and plaintiff cross-moved for partial summary judgment imposing liability under sections 240 (1) and 241 (6). The trial
 
 *499
 
 court granted all three defendants relief by dismissing the complaint against each of them in its entirety.
 

 On plaintiffs appeal, however, a divided Appellate Division reinstated all of plaintiffs causes of action except the Labor Law § 241 (6) claim asserted against defendant International Paper.
 
 [1]
 
 The majority concluded that, even under our recent holding in
 
 Rocovich v Consolidated Edison Co.
 
 (78 NY2d 509), plaintiff could assert a cause of action under Labor Law § 240 (1) because he had been exposed to an "elevation-related risk” arising from the inadequacy of the protective device with which he had been supplied (180 AD2d, at 390). As to plaintiffs Labor Law § 200 (1) claim, the Appellate Division held that International Paper’s contractual promise to manage and supervise the construction was sufficient to establish prima facie that that defendant may have exercised the requisite control or supervision of the work. Finally, the Court held that plaintiffs Labor Law § 241 (6) claim against defendant International Paper was not sustainable because his allegations were too general to support recovery under that provision. The Court subsequently granted plaintiff and defendant International Paper leave to appeal to this Court, certifying a dispositive question of law.
 
 [2]
 
 We agree with the Appellate Division’s conclusion on plaintiffs Labor Law § 200 (1) and § 241 (6) causes of action, but we reject that Court’s determination on plaintiffs Labor Law § 240 (1) claim.
 

 I. Liability Under Labor Law § 240 (1)
 

 Labor Law § 240 (1), often called the "scaffold law,” provides that "[a]ll contractors and owners * * * shall furnish or erect,
 
 *500
 
 or cause to be furnished or erected * * * scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to [construction workers employed on the premises].”
 
 [3]
 
 The purpose of this statute is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility
 
 (see, Zimmer v Chemung County Performing Arts,
 
 65 NY2d 513, 520; 1969 NY Legis Ann, at 407). It is by now well established that the duty imposed by Labor Law § 240 (1) is nondelegable and that an owner or contractor who breaches that duty may be held liable in damages regardless of whether it has actually exercised supervision or control over the work
 
 (see, e.g., Haimes v New York Tel. Co.,
 
 46 NY2d 132, 136-137).
 

 We recently had occasion to consider the nature of the occupational hazards to which Labor Law § 240 (1) was addressed. Noting that the statute " 'is to be construed as liberally as may be for the accomplishment of the purpose for which it was * * * framed’ ”
 
 (Koenig v Patrick Constr. Corp.,
 
 298 NY 313, 319, quoting
 
 Quigley v Thatcher,
 
 207 NY 66, 68), we held in
 
 Rocovich v Consolidated Edison Co. (supra)
 
 that Labor Law § 240 (1) was aimed only at elevation-related hazards and that, accordingly, injuries resulting from other types of hazards are not compensable under that statute even if proximately caused by the absence of an adequate scaffold or other required safety device.
 

 The injury sustained by the plaintiff in this case — severe and disabling back strain — is not the kind of harm that is typically associated with elevation-related hazards. Nonetheless, plaintiff contends that he should be permitted to recover under Labor Law § 240 (1) because his injury was "related to the effects of gravity” in that it was allegedly produced by plaintiff’s need to work in a contorted position in order to avoid falling down the deep shaft on which he was working.
 

 The problem with plaintiff’s argument is that it misconstrues the import of our analysis in
 
 Rocovich.
 
 As we observed in that case, Labor Law § 240 (l)’s list of required safety devices (e.g., "scaffolding,” "hoists,” "braces,” "irons” and "stays”), all of which are used in connection with elevation differentials, evinces a clear legislative intent to provide "ex
 
 *501
 
 ceptional protection” for workers against the "special hazards” that arise when the work site either is itself elevated or is positioned below the level where "materials or load [are] hoisted or secured” (78 NY2d, at 514). The "special hazards” to which we referred in
 
 Rocovich,
 
 however, do not encompass
 
 any and all
 
 perils that may be connected in some tangential way with the effects of gravity. Rather, the "special hazards” referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured
 
 (see, DeHaen v Rockwood Sprinkler Co.,
 
 258 NY 350). In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker
 
 from harm directly flowing from the application of the force of gravity to an object or person.
 
 The right of recovery afforded by the statute does not extend to other types of harm, even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold, stay or hoist.
 

 The facts in this case provide a good illustration of the distinction. If plaintiff’s allegations are accurate, the platform with which plaintiff was provided could well be found deficient or even unsafe, since it was placed in a way that required its occupant to work in a strained and contorted position. Nevertheless, however unsafe the makeshift "scaffold” may have been in that respect, it cannot be said that the device did not serve the core objective of Labor Law § 240 (1) — preventing plaintiff from falling down the shaft. In that regard, the device did not malfunction and was not defective in its design. Thus, as was noted by the dissenter in the Court below, plaintiff’s injuries allegedly flowed from a deficiency in the device that was "wholly unrelated to the hazard which brought about its need in the first instance” (180 AD2d, at 394 [Mercure, J., dissenting in part]). Accordingly, contrary to the views of the Appellate Division majority, plaintiff cannot rely on Labor Law § 240 (1) as a basis for recovery.
 

 II. Liability Under Labor Law § 241 (6)
 

 As an alternative to the rights conferred by Labor Law § 240 (1), plaintiff relies on Labor Law § 241 (6), which requires owners and contractors to "provide reasonable and adequate protection and safety” for workers and to comply with the specific safety rules and regulations promulgated by
 
 *502
 
 the Commissioner of the Department of Labor. As is the duty imposed by Labor Law § 240 (1), the Labor Law § 241 (6) duty to comply with the Commissioner’s regulations is nondelegable
 
 (e.g., Long v Forest-Fehlhaber,
 
 55 NY2d 154, 159;
 
 Allen v Cloutier Constr. Corp.,
 
 44 NY2d 290).
 
 [4]
 
 Thus, to the extent that plaintiff has asserted a viable claim under Labor Law § 241 (6), he need not show that defendants exercised supervision or control over his worksite in order to establish his right of recovery. Nonetheless, in this case, plaintiff’s Labor Law § 241 (6) claim must fail because of the inadequacy of his allegations regarding the regulations defendants purportedly breached.
 

 In support of his claim under section 241 (6), plaintiff relied exclusively on 12 NYCRR 23-1.25 (d), which requires that "[a]ll persons engaged in welding or flame-cutting * * * be provided where necessary with
 
 proper
 
 scaffolds installed and used in compliance with th[ese regulations].” Plaintiff does not contend that any particular regulatory requirement regarding the design, capacity or placement of scaffolds was violated. Rather, he contends only that the "scaffold” with which he was provided was not a "proper” one within the meaning of 12 NYCRR 23-1.25 (d), because it was not "of such kind and quality as a reasonable and prudent [person] experienced in construction * * * operations would require in order to provide safe working conditions.” Plaintiff derives this standard from 12 NYCRR 23-1.4 (a), which provides for its application whenever the regulations in the Industrial Code employ "such general terms as
 
 adequate, effective, equal, equivalent, firm, necessary, proper, safe, secure, substantial, sufficient, suitable
 
 and other similar terms * * * to describe [required] materials, devices, structures, methods and procedures” (emphasis in original). We conclude, however, that allegations such as plaintiff’s, which rely on claimed failures to measure up to such general regulatory criteria as "adequate,” "effective” and "proper,” are not sufficient to give rise to a triable claim for damages under Labor Law § 241 (6). Our conclusion in this regard is based on our understanding of
 
 *503
 
 Labor Law § 241’s over-all design, as well as its relationship with the other protective provisions of the Labor Law.
 

 The general common-law principles governing landowners’ duty to provide a safe workplace may be found in Labor Law § 200 (1)
 
 (e.g., Lombardi v Stout,
 
 80 NY2d 290, 294). In contrast, the "specific, positive commands” applicable to all contractors and owners are contained in Labor Law § 240 (1), which governs elevation-related safety measures, and in Labor Law § 241 (l)-(5), which delineate the safety requirements in the areas of flooring, elevators and hoisting apparatus
 
 (Allen v Cloutier Constr. Corp., supra,
 
 at 297;
 
 see, Zimmer v Chemung County Performing Arts,
 
 65 NY2d 513, 522,
 
 supra; Long v Forest-Fehlhaber, supra,
 
 at 160). Labor Law § 241 (6) is, in a sense, a hybrid, since it reiterates the general common-law standard of care and then contemplates the establishment of specific detailed rules through the Labor Commissioner’s rule-making authority
 
 (Zimmer v Chemung County Performing Arts, supra,
 
 at 522;
 
 see, Haimes v New York Tel. Co., supra).
 

 We have traditionally treated the provision that merely incorporates the general common-law standard
 
 (see,
 
 Labor Law § 200 [1]) differently from the provisions containing specific commands and standards
 
 (see,
 
 Labor Law § 240 [1]; § 241). The latter have been held to create duties that are nondelegable
 
 (see, e.g., Bland v Manocherian,
 
 66 NY2d 452, 460), while the former do not
 
 (see, Lombardi v Stout, supra).
 
 We have also attached analytical significance to the distinction between the Labor Law provisions that are "self-executing” in the sense that they may be implemented "without regard to external considerations such as rules and regulations, contracts or custom and usage” (Labor Law § 240 [1]; § 241 [l]-[5]) and those whose terms "require reference to outside sources to determine the standard by which a defendant’s conduct must be measured” (Labor Law § 200 [1]; § 241 [6])
 
 (see, Zimmer v Chemung County Performing Arts, supra,
 
 at 521-523;
 
 see also, Long v Forest-Fehlhaber, supra).
 
 Again, important legal consequences have been made to depend upon whether the statutory provision in question sets forth a specific requirement or standard of conduct or instead " 'does no more than broadly [require]’ that the work area ' "provide reasonable and adequate protection and safety” ’ ”
 
 (Bland v Manocherian, supra,
 
 at 460-461, quoting
 
 Long v Forest-Fehlhaber, supra,
 
 at 160).
 

 The duty at issue here — the requirement that welders be provided with "adequate,” "proper” and "suitable” scaffolds
 
 *504
 
 (12 NYCRR 23-1.4 [a]; 23-1.25 [d]) — is one derived from a regulation promulgated under the Labor Law rather than from a provision of the Labor Law itself. Nonetheless, the distinction that our case law has consistently drawn between general and specific commands continues to have critical legal significance, where, as in this case, the injured plaintiff is seeking to hold the landowner and general contractor liable for an alleged breach of a
 
 nondelegable
 
 duty.
 

 Like Labor Law § 200 (1) and the general standard set forth in the first sentence of Labor Law §241 (6), the regulatory command defendants are alleged to have breached in this instance is "but a reiteration of common-law standards”
 
 (Long v Forest-Fehlhaber, supra,
 
 at 160). The duty to provide materials and equipment "of such kind and quality as a reasonable and prudent [person] experienced in construction * * * operations would require in order to provide safe working conditions” (12 NYCRR 23-1.4 [a]) adds nothing to the general common-law rule requiring the provision of a safe workplace. It is not so much a "specific, positive command”
 
 (Allen v Cloutier Constr. Corp., supra,
 
 at 297) as a routine incorporation of the ordinary tort duty of care into the Commissioner’s regulations. As such, it cannot by itself be relied upon as the source of an owner’s or general contractor’s nondelegable duty to all workers assigned to perform construction chores on the premises.
 

 Indeed, to permit plaintiff to use this broad, nonspecific regulatory standard as predicate for an action against a nonsupervising owner or general contractor under Labor Law § 241 (6) would seriously distort the scheme of liability for unsafe working conditions that has been developed in our case law. In the past, recovery for breach of the common-law duty of care, as embodied in Labor Law § 200 (1), could be had only if the injured employee could demonstrate that the named defendant had a direct hand, through either control or supervision, in the injury-producing work
 
 (e.g., Lombardi v Stout, supra,
 
 at 295;
 
 Persichilli v Triborough Bridge & Tunnel Auth.,
 
 16 NY2d 136, 145). If plaintiff’s argument were to succeed, however, injured workers could readily circumvent that requirement by pointing to the use of some "general term” such as "adequate,” "effective,” "proper,” "safe,” or "suitable,” in a relevant regulation within the Industrial Code. Given the Code’s liberal use of those terms, Labor Law § 200 (1) would be rendered all but superfluous in industrial-accident litigation. Such a result could not have been within the Legislature’s
 
 *505
 
 intention and was certainly not contemplated by our Court when we held that an owner or general contractor could be held liable for violations of rules promulgated pursuant to Labor Law § 241 (6) without regard to Labor Law § 200 (l)’s requirement of supervision or control over the work
 
 (see, Allen v Cloutier Constr. Corp., supra).
 

 Accordingly, we hold that, for purposes of the nondelegable duty imposed by Labor Law § 241 (6) and the regulations promulgated thereunder, a distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking the "[g]eneral descriptive terms” set forth and defined in 12 NYCRR 23-1.4 (a). The former give rise to a nondelegable duty, while the latter do not. Since the regulation on which plaintiff relies falls into the latter category, he cannot benefit from the reduced burden of proof applicable to causes of action asserted under Labor Law § 241 (6).
 

 III. Liability Under Labor Law § 200 (1)
 

 Plaintiff’s third cause of action against defendants Curtis-Palmer and International Paper Co. is premised on a claimed breach of Labor Law § 200 (1), which codifies landowners’ and general contractors’ common-law duty to maintain a safe workplace.
 
 [5]
 
 As noted above, where such a claim arises out of alleged defects or dangers arising from a subcontractor’s methods or materials, recovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation
 
 (e.g., Lombardi v Stout, supra,
 
 at 295;
 
 Kappel v Fisher Bros., 6th Ave. Corp.,
 
 39 NY2d 1039, 1041). This rule is an outgrowth of the basic common-law principle that "an owner or general contractor [sh]ould not be held responsible for the negligent acts of others over whom [the owner or general contractor] had no direction or control”
 
 (Allen v Cloutier Constr. Corp., supra,
 
 at 299).
 

 
 *506
 
 In this case, plaintiff’s claim appears to arise from an alleged defect in the "methods or materials” utilized by his employer, Bechtel. Nonetheless, at this stage in the proceeding, plaintiff’s submissions are sufficient to avoid summary dismissal of his Labor Law § 200 (1) claim because they suggest that he may be able to show that defendant International Paper, the general contractor, exercised the requisite degree of supervision and control over the portion of the work that led to his injury.
 

 In response to the motion for summary judgment, plaintiff submitted a copy of the contract between Curtis-Palmer and International Paper in which International Paper undertook to "supervise” the construction work and, further, to comply with the legal standards governing the safety of all employees on the site, including those of its subcontractors. While these promises are not in themselves sufficient to justify holding International Paper liable for the alleged inadequacy of the scaffold with which plaintiff was supplied, they do furnish cause to believe that further discovery may lead to evidence that International Paper’s employees
 
 did
 
 exercise actual supervision or control over plaintiffs worksite
 
 (see,
 
 CPLR 3212 [f]). In this connection, it is noteworthy that plaintiff had not yet deposed defendants’ representatives when the motion for summary judgment suspended discovery. Further, the contract between International Paper and Bechtel, defendant’s employer, had not yet been produced when discovery was provisionally halted. Thus, any conclusion that plaintiff cannot produce evidence to justify submitting the question of International Paper’s control and/or supervision to a trier of fact is, manifestly, premature, despite International Paper’s submission of an affidavit by its Safety Superintendent disclaiming supervision of any of its subcontractors
 
 (see, Groves v Land’s End Horn. Co.,
 
 80 NY2d 978).
 

 Indeed, dismissal of plaintiffs Labor Law § 200 (1) claim at this point would require us to assume that International Paper routinely and repeatedly breached its contractual obligations to Curtis-Palmer. In the absence of adequate discovery, we are not prepared to make such an assumption. Thus, we conclude that the Appellate Division did not err in reinstating plaintiffs Labor Law § 200 (1) cause of action against defendant International Paper.
 
 [6]
 
 _
 

 
 *507
 
 Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this opinion and, as so modified, affirmed. The certified question should be answered in the affirmative.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa and Smith concur.
 

 Order modified, etc.
 

 [1]
 

 . Although the trial court had characterized the defense motion for summary judgment as one made by all three defendants, the Appellate Division concluded that defendants Curtis-Palmer and Saratoga Development had not been parties to the motion and therefore had not been entitled to summary relief on any of plaintiffs claims (180 AD2d 385, 391).
 

 [2]
 

 . The Appellate Division certified the following question: "Did this court err as a matter of law in modifying the order entered May 2, 1991 so as to grant summary judgment to defendant International Paper Company dismissing plaintiffs cause of action based upon Labor Law § 241 (6) and deny summary judgment to defendants in all other respects and, as so modified, affirming that order and in dismissing the appeal from the order entered August 5, 1991?” The August 5, 1991 order referred to denied a motion by plaintiff for reargument and/or renewal of the trial court’s prior order dismissing the complaint. On this appeal, plaintiff has made no separate argument addressed to the propriety of the Appellate Division’s decision with respect to this order.
 

 [3]
 

 .
 
 Owners of one- and two-family dwellings who contract for but do not direct or control the work are exempt from the duty imposed by Labor Law §240(1).
 

 [4]
 

 . The rules governing liability under Labor Law § 240 (1) and § 241 (6) differ in at least two material respects. Contributory and comparative negligence are valid defenses to claims asserted under the latter section, while section 240 (1) claims are not subject to those defenses
 
 (see, Long v Forest-Fehlhaber, supra).
 
 Furthermore, a breach of Labor Law § 240 (l)’s requirements leads to "absolute” liability, while a breach of a duty imposed by a regulation promulgated under Labor Law § 241 (6) is merely some evidence of negligence
 
 (see, Long v Forest-Fehlhaber, supra).
 

 [5]
 

 . Labor Law § 200 (1) provides: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.”
 

 [6]
 

 . Since defendants Curtis-Palmer and Saratoga are not parties to this
 
 *507
 
 appeal, we do not consider the sufficiency of plaintiffs submissions with respect to their Labor Law § 200 (1) liability.