**32**

Lindsey WILSON, Plaintiff–Appellant,

v.

CITY OF NEW YORK, New York City Health and Hospitals Corporation, Defendants–Third–Party–Plaintiffs–Appellees–Cross–Appellants,

Millar Elevator Industries, Inc., Third–Party–Defendant–Cross–Appellee.

Nos. 1589, 1869, Dockets 95–9201, 96–7240.

United States Court of Appeals, Second Circuit.

Argued May 24, 1996.

Decided July 15,1996.

Robert Tolchin, New York City (David Jaroslawicz, Jaroslawicz & Jaros, on the brief), for Plaintiff–Appellant.

Kathleen Alberton, New York City (Paul A. Crotty, Corporation Counsel of City of New York, Larry A. Sonnenshein, on the brief), for Defendants–Third–Party–Plaintiffs–Appellees–Cross–Appellants.

David Bamberger, New York City (Lawrence A. Hoffman, Olshan Grundman Frome & Rosenzweig, on the brief), for Third–Party–Defendant–Cross–Appellee.

Before: KEARSE, WINTER, and CALABRESI, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Lindsey Wilson appeals from a final judgment of the United States District Court for the Southern District of New York, Whitman Knapp, *Judge*, dismissing his complaint seeking damages from defendants City of New York and New York City Health and Hospitals Corporation (collectively "the City") for personal injuries. Wilson contended that the City (a) was strictly liable under N.Y. Labor Law §§ 240(1) and 241(6) (McKinney 1986 & Supp.1996) because his injuries occurred while he was making repairs on City property, and (b) was liable under N.Y. Labor Law § 200 (McKinney 1986) for negligence in failing to provide him with a safe place to work. The district court granted summary judgment dismissing Wilson's claim under § 240(1) on the ground that the accident occurred while Wilson was engaged in maintenance work, not in "repair" work within the meaning of that section; dismissing his claim under § 241(6) for failure to show facts that could establish a violation of that section; and dismissing his claim under § 200 on the ground that he had not proffered sufficient evidence to make out a prima facie case of negligence. On appeal, Wilson contends principally that the district court erred in construing §§ 240(1) and 241(6) not to encompass the maintenance work he was performing, and that there were questions of fact that made the summary dismissal of his negligence claim improper. The City conditionally cross-appeals from so much of the judgment as dismissed its cross-claim against third-party-defendant Millar Elevator Industries, Inc. ("Millar"), for indemnification or contribution in the event that the City was found liable to Wilson. For the reasons below, we affirm the judgment and dismiss the cross-appeal as moot.

## I. BACKGROUND

Harlem Hospital (the "Hospital") is a medical institution owned and operated by the City. In 1993, Millar performed maintenance services on the Hospital's elevators pursuant to a five-year contract with the City ("Maintenance Service Contract" or "Contract"). Wilson, a mechanic with 23 years' experience, was employed by Millar and was assigned to

the Hospital as the on-premises elevator mechanic.

Wilson's duties included routine inspection and maintenance of the elevators and cleaning of the elevator pits. As part of his periodic maintenance tasks, Wilson inspected the bottoms of the elevators approximately three times a month. According to Wilson's deposition testimony, in performing that chore, he regularly stood on a four-inch-wide iron beam (the "I-beam") located 33 inches above the elevator-shaft floor. Approximately every six months, as part of the regular maintenance program, Wilson changed the elevators' roller guides, devices that allow elevators to move without wobbling or veering off track. Roller guides are located at the top and bottom of the elevator car. For replacement of the bottom guides, the elevator car was normally lowered so that its underside was some seven feet above the floor of the shaft.

On March 4, 1993, on the instructions of his supervisor Manuel Bonilla, an employee of Millar, Wilson attempted to replace the bottom roller guides on one of the Hospital's elevators. At approximately 11:30 a.m., Wilson descended into the elevator shaft via a ladder mounted on the wall below the basement; he worked from the ladder for about an hour and then stepped onto the I-beam. After working from the I-beam for a few minutes, he slipped and fell to the bottom of the elevator pit, injuring his knee, shoulder, and back.

Wilson commenced the present action in September 1993. He asserted, *inter alia*, that on the day of his fall there was no ladder for him to use instead of the I-beam and that the I-beam had been sprayed with a slippery substance he believed to be liquid insecticide. He claimed principally that the City was strictly liable under N.Y. Labor Law §§ 240(1) and 241(6) for failing to provide him with adequate safety devices or a safe work environment and for allowing him to use a makeshift scaffold (the I-beam) that was dangerous and defective. The City filed a third-party complaint against Millar, alleging principally that the Maintenance Service Contract obligated Millar to indemnify the City for any damages recovered by Wilson

from the City due to negligence on the part of Millar. Following discovery, the City moved for summary judgment dismissing Wilson's complaint, contending that in connection with his accident (1) Wilson was performing ordinary maintenance work, which is not within the scope of the Labor Law sections on which he relied for his claim of strict liability, and (2) that Wilson could not show any negligence on the part of the City.

In support of its contention that replacement of the elevator roller guides was routine maintenance work, rather than repairs, the City relied principally on statements by Wilson and various documents, including its Maintenance Service Contract with Millar. The Contract provided, *inter alia*, that Millar would staff the Hospital with an on-site elevator mechanic to maintain and repair the Hospital's elevators. In a section entitled "PREVENTIVE MAINTENANCE SERVICE PROTOCOL" ("Preventive Maintenance Section") the Contract stated that Millar was

> responsible to perform ... routine prescheduled preventive maintenance on the elevators, which shall include all repairs and or replacements of parts as required for proper operation of the elevator, and as set forth below on the routine preventive inspection protocols per period, so as to ensure at all times the proper operation of the equipment during the contractual period.

(Contract at 58.) That section provided a nonexhaustive list of preventive-maintenance activities to be performed by Millar on a periodic basis, including "*QUARTERLY ...* 11. Car. Check adjustment of car shoes or roller guides," and "*SEMI–ANNUALLY ...* 17. Roller Guides.... Lubricate roller guide pivots." (*Id.* at 61–62.) The Preventive Maintenance Section also stated that "[t]he terms 'check', 'observe', etc. ... mean clean, clear, repair, replace, adjust, lubricate or replenish lubricant, etc. if necessary." (*Id.* at 58.)

Consistent with these provisions, Wilson testified that the roller guides at the Hospital were routinely replaced every six months. He testified that before he attempted to replace the roller guides on March 4, 1993, the

elevator was functional; it was temporarily taken out of service to permit him to replace the roller guides. In Wilson's March 4, 1993 daily work report, filed with the City as required under the Contract (*see id.* at 66 ("maintenance personnel prior to departure from the Hospital" to file a report of "all maintenance and repair work" they performed that day)), Wilson described his work that day as consisting of "Trouble shooting and Maintenance." His report did not indicate any problem in the functioning of the elevator on that date.

In support of its contention that Wilson could not show that the City had been negligent, the City presented evidence relating to the alleged unavailability of a ladder, the alleged presence of insecticide on the I-beam, and the City's lack of knowledge with respect to either circumstance. First, though not disputing, for purposes of summary judgment, Wilson's assertion that he frequently had stood on the I-beam, the City stated that it had no knowledge that he engaged in that practice. It submitted deposition testimony by a construction manager employed by the City and assigned to the Hospital, who testified that he had never seen a mechanic stand on the I-beam in order to perform work beneath an elevator car. Bonilla, Wilson's supervisor, testified that Millar had been given an equipment room at the Hospital, where it normally kept a ladder on which Wilson could have stood, instead of the I-beam, to replace the roller guides. Although Wilson testified in his deposition that he had no ladder to use on March 4 because "[p]robably two or three weeks prior" to that date, someone had broken into Millar's equipment room and stolen the ladder, Bonilla testified that it was Wilson's responsibility to report such a theft, and the City introduced the official Crime and Incident Report reflecting the report that Wilson made ("Theft Record"). The Theft Record stated that on the previous day, when Wilson

> left RM 72 (steam flow meter room [where Millar's maintenance equipment was stored]), the door was secure. When he returned at 1400 hrs. he found the front door busted open, [t]he lock ... had been broken off the door,

and that the "equipment ... discovered missing from the room" included the ladder. The Theft Record, however, was dated March 5, 1993, and it stated that the theft had occurred between 11:30 a.m. and 2:00 p.m. on March 4, 1993. Since March 4 was the date of Wilson's accident, the City argued that Wilson's own report showed that the ladder was not stolen until after Wilson went to attempt the roller-guide replacement during which his accident occurred, and thus that Wilson's use of the I-beam, rather than the ladder, was wholly voluntary. It argued also that, in any event, since Wilson did not report the theft until March 5, the City had no way of knowing prior to the accident that Wilson would use a makeshift scaffold to reach the bottom of the elevator car.

Second, with respect to Wilson's suggestion that the I-beam had been slippery because it was covered with insecticide, the City presented evidence that the Hospital used an independent contractor to perform all extermination work; that there were areas of the Hospital that the exterminator usually would not spray; and that the areas generally not sprayed included the bottoms of the elevator shafts. The Hospital's records contained no indication that exterminator spraying had occurred in the elevator shafts during the weeks immediately prior to Wilson's accident. Further, Bonilla testified that the cleanliness of the elevator pits was the responsibility of Millar's on-premises mechanic; any spraying of the pits would be at the mechanic's request: "Usually the mechanic requests that they exterminate. He is the one that has to go down there." Wilson presented no evidence from the exterminator of a visit prior to his accident.

The district court, in a Memorandum and Order dated October 25, 1995 ("Opinion"), granted the City's motion for summary judgment and dismissed Wilson's complaint. The court observed that § 240(1) imposes liability on contractors and owners only where the person injured is engaged in " 'the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure,' " Opinion at 2 (quoting N.Y. Labor Law § 240(1)), and that New York cases interpreting that section had ruled that, un-

less the equipment had ceased to be functional, "repairing" did not include maintenance work in a nonconstruction context. The court concluded:

> At the time of the accident, plaintiff was not engaged in the type of repair envisioned by the statute. The elevator was not broken and it is no[ ]where alleged that the elevator had been rendered inoperative or that it had been malfunctioning. The time to replace the worn guides had simply arrived.
>
> The elevator was located on premises on which there was no construction, demolition, renovation or any other type of structural work underway in the building itself. In view of the strict liability imposed by this section and the fact that such liability is generally imposed only to guard against inordinate dangers, the language of the statute may not be strained to encompass the type of routine maintenance work performed by plaintiff which was far removed from the risks associated with the construction or demolition of a building.

Opinion at 2.

The court also granted summary judgment dismissing Wilson's claim under N.Y. Labor Law § 241(6) on the ground that, *inter alia*, the statute requires property owners and contractors "to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" and that Wilson had "failed to allege a breach of specific regulations promulgated under this section." Opinion at 3–4. Finally, the court found that the City could not be held liable under a commonlaw theory of negligence, as codified in N.Y. Labor Law § 200, because Wilson had presented no evidence that the City had actual or constructive notice of the defective condition of the I-beam and no evidence that the City exercised supervisory control over his work. Having dismissed Wilson's claims against the City, the court dismissed the City's third-party complaint seeking indemnification or contribution from Millar.

Judgment was entered in favor of the City and Millar, and this appeal followed.

## II. DISCUSSION

On appeal, Wilson contends principally that replacing elevator roller guides constitutes a "repair" under New York law and that questions of material fact exist as to the City's negligence. We disagree.

### A. *The Scope of "Repairing" under N.Y. Labor Law § 240(1)*

Section 240(1) provides, in pertinent part, that

> [a]ll contractors and owners and their agents ... in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, ... and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor Law § 240(1). The purpose of this section is to provide protection for workers who are subjected to elevation-related risks; the statute achieves this by imposing absolute responsibility for safety practices on owners, general contractors, and their agents, instead of on the workers themselves. *See Gordon v. Eastern Railway Supply, Inc.*, 82 N.Y.2d 555, 559, 606 N.Y.S.2d 127, 129, 626 N.E.2d 912, 914 (1993). Consistent with this purpose, the New York Court of Appeals has held that "section 240(1) is to be construed ... liberally," *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 221, 583 N.E.2d 932, 933–34 (1991) (internal quotation marks omitted), and is to be applied without regard to negligence on the part of the worker, *see Zimmer v. Chemung County Performing Arts, Inc.*, 65 N.Y.2d 513, 521, 493 N.Y.S.2d 102, 105, 482 N.E.2d 898, 900–01 (1985). The duty is nondelegable and the liability is strict; so long as the violation of the statute was the proximate cause of the worker's injuries, the owner will be liable even though it exercised no supervision or control over the plaintiff's work. *See, e.g., Ross v. Curtis–Palmer Hydro–Electric Co.*, 81 N.Y.2d 494, 500, 601 N.Y.S.2d 49, 52, 618 N.E.2d 82, 85 (1993).

While § 240(1) refers to workers "repairing" a structure, it does not use the

terms "maintaining" or "maintenance." Accordingly, the New York courts have interpreted the section as covering only the types of maintenance work that are expressly mentioned, to wit, "painting, cleaning or pointing." *See, e.g., Smith v. Shell Oil Co.*, 85 N.Y.2d 1000, 1002, 630 N.Y.S.2d 962, 963, 654 N.E.2d 1210, 1211 (1995). In considering whether replacing parts of a building's equipment is work covered by § 240(1), the New York courts have distinguished between equipment which was functioning and that which was not. For example, an attempt to fix a sign that was "operating improperly" constitutes a repair within the meaning of § 240(1), *see Izrailev v. Ficarra Furniture of Long Island, Inc.*, 70 N.Y.2d 813, 815, 523 N.Y.S.2d 432, 433, 517 N.E.2d 1318, 1319 (1987), whereas the replacement of burnt-out light bulbs is maintenance, not repair, *see Smith v. Shell Oil Co.*, 85 N.Y.2d at 1002, 630 N.Y.S.2d at 963, 654 N.E.2d at 1211. Similarly the removal of a "broken" motor for the purpose of mending it is a repair, *see Holka v. Mt. Mercy Academy*, —— A.D.2d ——, 634 N.Y.S.2d 310, 311 (4th Dep't 1995), as is the replacement of a fire alarm system that was "no longer functional," *see Tate v. Clancy-Cullen Storage Co., Inc.*, 171 A.D.2d 292, 575 N.Y.S.2d 832, 834 (1st Dep't 1991), whereas the replacement of a component that is merely worn is routine maintenance, *see, e.g., Rennoldson v. James J. Volpe Realty Corp.*, 216 A.D.2d 912, 629 N.Y.S.2d 141, 141 (4th Dep't) (change of leaking tube on car wash machine is routine maintenance and not a repair under § 240(1)), *leave to appeal dismissed*, 86 N.Y.2d 837, 634 N.Y.S.2d 446, 658 N.E.2d 224 (1995); *Edwards v. Twenty–Four Twenty–Six Main Street Associates*, 195 A.D.2d 592, 601 N.Y.S.2d 11, 12–13 (2d Dep't 1993) (replacement of dilapidated plywood shelves is not a repair within meaning of § 240(1)).

Under these standards, we conclude that the district court properly granted summary judgment dismissing Wilson's claim under § 240(1). Though the parties were in disagreement as to whether the replacement of the roller guides was skilled work, and each side presented evidence to support its position, that dispute was not material. Under the New York cases, the applicability of § 240(1) in these circumstances turned on whether the equipment was functional or not, not on the degree of skill required in connection with the work to be performed. There was no genuine issue to be tried here as to the nature and purpose of Wilson's task. Consistent with the Service Maintenance Contract, Wilson admitted that Millar regularly replaced roller guides "about every six months" and that that was part of routine maintenance, a "normal thing that we do on the job." It is undisputed that the elevator was functional on March 4, that it had not been rendered nonfunctional by the worn roller guides, that it functioned until it was taken out of service for the purpose of replacing the roller guides, and that the replacement of the roller guides was intended merely to prevent malfunctioning of the elevator in the future.

Accordingly, given the standards set by the New York courts, we agree with the district court that Wilson's attempt to replace the roller guides on the bottom of the elevator car was an act of preventive maintenance that fell outside the scope of § 240(1).

Wilson contends that the distinction between maintenance and repairs is not rational and that an employee who performs maintenance to prevent building equipment from ceasing to function properly should have as much entitlement to absolute protection from dangerous scaffolding as has an employee who repairs equipment that has ceased to be functional. It is not our role, however, to make the policy choices that impose strict liability on property owners or to fashion classes of persons in whose favor such liability should be imposed. The drawing of lines between persons who are entitled to the protections accorded by a statute and those who are not is the role of the legislature. We conclude that the district court correctly construed the New York cases, which have held that one of the lines drawn by the New York legislature to limit the groups of workers entitled to the benefit of the strict liability imposed by § 240(1) includes persons repairing equipment that is not functional and excludes those performing maintenance work not mentioned in the statute on equipment that is still functional.

## B. *Liability Under N.Y. Labor Law § 241(6)*

■ Section 241(6) requires contractors, owners, and their agents to assure that "[a]ll areas in which construction, excavation or demolition work is being performed [are] so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places." N.Y. Labor Law § 241(6). A state regulation defines "construction work" for these purposes as including "[a]ll work of the types performed in the ... maintenance ... of buildings or other structures." 12 NYCRR 23–1.4(b)(13) (1995); *see also Vernieri v. Empire Realty Co.*, 219 A.D.2d 593, 631 N.Y.S.2d 378, 380 (2d Dep't 1995) (applying 12 NYCRR 23–1.4(b)(13) to claim brought under § 241(6)). Assuming that under this definition Wilson's elevator maintenance work was within the scope of § 241(6), his § 241(6) claim was nonetheless properly dismissed. Under the New York case law, in order to prevail on a claim under this section, a plaintiff must prove (a) that the defendant violated a safety regulation that set forth a specific standard of conduct, and (b) that that violation was the proximate cause of his injuries. *See, e.g., Ross v. Curtis–Palmer Hydro–Electric Co.*, 81 N.Y.2d at 502, 601 N.Y.S.2d at 53, 618 N.E.2d at 86; *Ares v. State of New York*, 80 N.Y.2d 959, 960, 590 N.Y.S.2d 874, 875, 605 N.E.2d 361, 362 (1992); *D'Avila v. City of New York*, 205 A.D.2d 729, 613 N.Y.S.2d 435, 437 (2d Dep't 1994), *leave to appeal denied*, 84 N.Y.2d 813, 623 N.Y.S.2d 181, 647 N.E.2d 453 (1995). The district court properly dismissed Wilson's claim because he failed to submit any evidence of such a violation.

## C. *The Claim Under N.Y. Labor Law § 200*

■ Finally, Wilson's claim under Labor Law § 200 for negligence was properly dismissed substantially for the reasons stated by the district court's Opinion. An owner is not liable under § 200 unless it had "actual or constructive notice of the condition complained of," *DeTommaso v. M.J. Fitzgerald Construction Corp.*, 138 A.D.2d 341, 525 N.Y.S.2d 632, 634 (2d Dep't), *appeal denied*, 73 N.Y.2d 701, 535 N.Y.S.2d 595, 532 N.E.2d 101 (1988), and exercised supervision or control over the work performed by the plaintiff, *see, e.g., Comes v. New York State Electric & Gas Corp.*, 82 N.Y.2d 876, 877–78, 609 N.Y.S.2d 168, 169, 631 N.E.2d 110, 111 (1993); *Lombardi v. Stout*, 80 N.Y.2d 290, 295, 590 N.Y.S.2d 55, 57, 604 N.E.2d 117, 119 (1992); *Salzler v. New York Telephone Co.*, 192 A.D.2d 1104, 596 N.Y.S.2d 263, 264 (4th Dep't 1993).

Wilson failed to adduce evidence from which a rational juror could infer that the City had any knowledge, actual or constructive, of the conditions Wilson claims caused his accident. Notwithstanding Wilson's claim that the City was negligent in failing to provide him with a ladder, it was undisputed that a ladder had previously been provided and had been stored in the room assigned to Millar. Wilson claims that the ladder was stolen several weeks prior to his accident, a claim belied by the record of the theft report he made, which indicated that the theft occurred after he went to replace the roller guides. Even if the theft occurred at the earlier time, however, Wilson concedes that he did not report the theft until the day after his accident. He has presented no evidence that the City had actual or constructive knowledge of the unavailability of a ladder prior to his accident. He also presented no evidence that the City knew or should have known either that he had regularly used the I-beam to reach the bottom of the elevator car or that a substance had been sprayed on the beam prior to his accident.

Nor does the record contain any evidence that the City supervised the work performed by Wilson. Wilson was hired by Millar; he remained an employee of Millar while working as an on-site mechanic at the Hospital; he performed his services pursuant to the City's Contract for maintenance services by Millar; he was supervised by Bonilla, a Millar employee; and he attempted to change the roller guides pursuant to an instruction by Bonilla. Wilson's mere assertion that the City had control over his work as an on-site mechanic was not sufficient to raise an issue of fact for trial.

## CONCLUSION

We have considered all of Wilson's arguments on this appeal and have found in them no basis for reversal. Accordingly, we have no occasion to reach the issues raised by the City's conditional cross-appeal against Millar.

The judgment of the district court is affirmed. The cross-appeal is dismissed as moot.