■ ALEX NARDUCCI et al., Respondents-Appellants, v MANHASSET BAY ASSOCIATES et al., Appellants-Respondents,

and A&D Windows, Inc., et al., Respondents. Manhasset Bay Associates et al., Third-Party Plaintiffs-Appellants, v Atlantic Windows et al., Third-Party Defendants-Respondents. (And Other Actions.) [704 NYS2d 233] —Order, Supreme Court, Bronx County (Bertram Katz, J.), entered September 23, 1998, which, to the extent appealed from as limited by the briefs, denied the motions of EBH Construction, Manhasset Bay Associates and Thypin Steel Co. for summary judgment to the extent they sought dismissal of plaintiff's Labor Law § 240 (1) claim, denied that branch of EBH's summary judgment motion seeking dismissal of plaintiff's Labor Law § 200 claim against it, and denied that branch of Manhasset Bay's and Thypin's motion for summary judgment on their claims for indemnification, affirmed, without costs.

Plaintiff, an employee of third-party defendant Atlantic Windows, Inc., was injured on October 19, 1994 while working on the restoration of a building owned by defendant Manhasset Bay Associates and leased to defendant Thypin Steel Co. Defendant EBH Construction, Ltd. was the construction manager for the restoration project. Plaintiff was assigned to remove three metal window frames, each measuring 104 inches high and 38 to 40 inches wide. Each window was divided by steel mullions to produce a window containing three to five lights across and five to eight lights high. According to plaintiff, a scissor jack (a hydraulically operated scaffold) was supposed to be provided, but he was directed to begin removal of the windows using an aluminum extension ladder.

Plaintiff began by breaking out any remaining glass in the rightmost frame with his hammer before cutting through the steel frame with a reciprocating saw. After cutting through several mullions of the window on the right, plaintiff rested the saw on the bottom sill, holding the saw with his right hand and holding onto the ladder with his left. As he was inspecting the left side of the frame to determine how many bolts held it in place, a pane of glass fell from the top of the adjacent, middle window, striking his right arm. Plaintiff estimates that the bottom of the window was situated some six feet above ground level and that the glass fell between five and nine feet before striking his arm. Although he sustained a severe cut to his right forearm, plaintiff did not fall. There is no indication that the ladder he used was defective in any way.

There is no doubt that plaintiff was positioned at an elevated work site at the time of the accident (*Brennan v RCP Assocs.*, 257 AD2d 389, *lv dismissed* 93 NY2d 889 [walkway elevated six feet above roof]; *Sasso v NYMED, Inc.*, 238 AD2d 799, 800

[scaffold elevated approximately six feet]). The size of the window frames required that plaintiff be able to reach surfaces located from approximately six to 15 feet above the ground. The work is therefore of a type for which Labor Law § 240 (1) is designed to afford protection (*cf., Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491; *Rodriguez v Tietz Ctr. for Nursing Care*, 84 NY2d 841; *see also, Brink v Yeshiva Univ.*, 259 AD2d 265). While plaintiff concededly did not fall from his elevated position (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 561), that is not dispositive (*Sasso v NYMED, Inc., supra*, at 800); plaintiff was injured by an object that fell from an elevated work site (*McCloud v Rochester Gas & Elec. Corp.*, 203 AD2d 923 [metal utility cap]; *Brust v Lauder Inc.*, 184 AD2d 474, 475 [wrench]). Finally, the secretary-treasurer of defendant A&D Windows, which hired Atlantic to perform the window replacement, testified that he told Joe Rotella of Atlantic Windows, "A scissor jack would be needed."

Defendants' position is anomalous. They do not dispute that the work required the use of the scissor jack that was ultimately provided. Nor do they dispute that this equipment was not made available to plaintiff. Their contention is that the simple ladder he was provided with must have been sufficient to afford the "proper protection" mandated by statute (Labor Law § 240 [1]) merely because plaintiff was not caused to fall to the ground. Whether, as plaintiff contends (and defendants implicitly concede), the use of a hydraulically operated scaffold would have enabled plaintiff to work from the top of the window frames, thus obviating the hazard posed by the falling glass, is a question of fact for resolution at trial. For purposes of a summary judgment motion, plaintiff has sufficiently demonstrated that the accident causing his injuries bears more that a tangential connection to the effects of gravity (*cf., Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY2d 494, 501) and the failure to supply him with the appropriate scaffold.

We agree with the IAS Court that material issues of fact exist regarding the liability of defendant EBH Construction pursuant to Labor Law § 200. In particular, the deposition testimony of EBH's president that he "was responsible for the subcontractor performing [the work] in the correct manner and timely fashion," and to the effect that EBH had oversight of all of the trades on the project, suffices to raise an issue with respect to its supervision and control of the work site. And, while it is generally true that a worker ordinarily assumes the risk of the hazard he or she is hired to ameliorate (*see, Sanders v*

*TDX Constr. Co.*, 203 AD2d 353), the worker does not assume the additional risk of an otherwise unsafe work site; those with supervisory control remain obligated to take reasonable measures to assure the safety of the workplace.

We have reviewed the parties' remaining arguments for affirmative appellate relief and find them to be unavailing. Concur—Ellerin, Rubin and Andrias, JJ.

Tom, J. P., and Buckley, J., dissent in part and concur in part in a memorandum by Tom, J. P., as follows: I disagree with the majority on the applicability of Labor Law § 240 to these facts, and to that extent I respectfully dissent.

Plaintiff was working on a window of a fire damaged building. His job was to remove and replace window frames, each measuring approximately 40 inches wide by 104 inches high, which rose from about six feet to fifteen feet above the ground. Plaintiff began to remove the farthest right window of the three windows he was supposed to remove. He used a ladder to reach the window frame and proceeded to break out all the glass in the window frame with a hammer. After hammering out the glass, plaintiff used an electric saw to cut the horizontal bars of the window frame starting with the lowermost bar located at the bottom of the window frame. After cutting one of the lower bars, plaintiff, while resting on the ladder, was injured when a piece of glass fell from an adjacent window and struck his arm.

Labor Law § 240 was enacted to confer broad protection to workers working at elevated sites, but not every injury arising from the effect of gravity invokes the remedial purposes of the statute. Rather, the special hazards triggering Labor Law § 240 "are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501). While "undeniably salutary," the statute "has historically been construed in the context of workers injured as a result of inadequate or missing safety equipment at elevated work sites * * * It is in recognition of the exceptionally dangerous conditions posed by elevation differentials at [such] work sites that section 240 (1) prescribes safety precautions for workers laboring under unique gravity-related hazards" (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490-491). When the theory of liability is that a falling object caused the injury, the object must fall from a location being worked (*Fox v Jenny Eng'g Corp.*, 122 AD2d 532, *affd on other grounds* 70 NY2d 761 [worker, on platform of tunnel-boring machinery, hit by rock dislodged from tunnel's ceiling; Labor Law § 240 inapplicable]).

In the instant case, plaintiff neither fell, nor was hit by an object that was presently involved in the job and that was being hoisted or was improperly secured. What kind of further safety device would have shielded plaintiff from being struck by the serendipitous displacement of a pane from an adjacent window on which he was not presently working? The protections of Labor Law § 240 (1) do " 'not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity' " (*Nieves v Five Boro Air Conditioning & Refrig. Corp.*, 93 NY2d 914, 916 [citation omitted]). The breach of the statutory obligation under Labor Law § 240 (1) to provide adequate safety devices must proximately cause the injury (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513). It is undisputed that the window that caused the injury is not the window on which plaintiff was working. It is also undisputed that the ladder was not defective, that it did not cause the injury, and that plaintiff did not fall from the ladder. Plaintiff has failed to establish that the absence of, or defect in, a safety device was the proximate cause of his injuries (*Rocovich v Consolidated Edison Co., supra*).

The majority contends that the use of a different kind of "ladder"—a hydraulic scissor lift—would have enabled plaintiff to work from the top of the window frame thus avoiding the danger of falling glass. This is pure speculation. The use of a hydraulic scissor lift would not have made a difference since plaintiff was dismantling the window frames one at a time and he would still have to be positioned at the lower portion of the window frame in order for him to cut and remove the window bars located there. The majority also contends that the appropriateness of a hydraulic scissor lift is undisputed, but that still does not create Labor Law § 240 (1) liability where the injury is caused by a separate danger totally unrelated to the very "risk which brought about the need for the safety device in the first instance" (*Nieves v Five Boro Air Conditioning & Refrig. Corp., supra*, at 916). A hydraulic scissor lift is designed to avoid the risk of falling from an elevated work site, not to prevent objects from falling.

Further, the window, as a structure, was not elevated vis-à-vis plaintiff. It was at his level. This is a hazard of working at construction or demolition sites, but is not one of the "special hazards" for which Labor Law § 240 was enacted. Generally, the mere fact that an object falls onto a worker does not present a Labor Law § 240 issue when there is no genuine elevation differential, such as when the fall is from a location at his level, even if a defective safety device is responsible (*Melo v*

*Consolidated Edison Company*, 92 NY2d 909). Hence, Labor Law § 240 liability was precluded when the object fell from above the worker's head (*Rodriguez v Margaret Tietz Ctr. for Nursing Care*, 84 NY2d 841; *Fox v Jenny Eng'g Corp.*, *supra*), when he was working on a tunnel structure when the structure is at worker's level, and even when a wall (*Misseritti v Mark IV Constr. Co.*, *supra* [structure was at worker's level]) or chimney (*Brink v Yeshiva Univ.*, 259 AD2d 265) collapsed from above onto the worker, even if bracing of the structure might have prevented the injury (*Misseritti v Mark IV Constr. Co.*, *supra*). Rather, such a plaintiff would be "exposed to the usual and ordinary dangers of a construction site, and not the extraordinary elevation risks" envisioned by the statute (*Rodriguez v Tietz Ctr. for Nursing Care*, *supra; accord Zdinski v North Star Constr.*, 242 AD2d 951, *lv denied* 91 NY2d 804; *Hunter v BTC Block 17/18*, 210 AD2d 968; *Brink v Yeshiva Univ.*, *supra*). Hence, the injury was not attributable to an elevation differential, as has been amply defined in case law.

Hence, I conclude that the Labor Law § 240 claim must be dismissed.