OPINION OF THE COURT
Rolando T. Acosta, J.
Background
The following facts were previously discussed in this court’s decision regarding defendants’ motion to dismiss the complaint, *602 also dated February 21, 2007 (motion sequence No. 1). Defendant Skanska USA Building Inc. was the “Design/Builder” of a runway at JFK Airport.* Plaintiff was an employee of Ruttura & Sons Construction Co., who was the concrete contractor. On April 16, 2003, plaintiff was instructed to assist in the removal of certain concrete forms that were used to hold wet concrete in place until the concrete dried. The forms were held in place by metal rods approximately 3 to SVa feet in height and about two inches in diameter. The rods would be jack-hammered in the ground about 6 to 10 inches. Plaintiff removed between 50 and 60 rods that day, most manually, using what he referred to as a wrench.
For rods that could not be manually removed, Ruttura, with Skanska’s consent, according to plaintiff, devised a method by which a cable was attached to the bucket of a backhoe. The wrench was attached to the end of the cable. Plaintiffs job was to place the wrench on the top of the rod, which was held in place solely by friction, and the backhoe operator would lift the basket and remove the rod from the ground. For one particular rod, the wrench kept slipping off, so plaintiff was instructed to hold the wrench in place while the backhoe applied pressure. While doing so, the wrench slipped, and upon the release of the pressure on the backhoe, the bucket came down and struck plaintiff on the head and caused injuries.
The difference between this motion and defendants’ motion to dismiss is that defendants have now produced an affidavit from an Anthony Sirico, the operating engineer employed by Ruttura who was operating the backhoe. (See defendants’ exhibit A.) According to Sirico, the accident did not occur as plaintiff testified to at his deposition. Rather, according to Sirico,
“[t]he top of the pin [or rod as referred to by plaintiff] was below the level of [plaintiffs] knees, so he crouched over at the waist [to hold the pin puller — which plaintiff referred to as the wrench]. The bucket of the backhoe [which was connected to the pin puller by a short steel wire] was at roughly the level of his waist. [Sirico] pulled on the wire with the backhoe. The next thing [Sirico] saw was [plaintiff] straighten up from a crouching to an upright position with the pin puller still in his *603 hands, and come backwards in the direction of the backhoe, which was now at about the level of his shoulders. [Plaintiff] struck the backhoe with his hardhat. He did not lose consciousness, and [Sirico] thought at first [plaintiff] was just joking when he said he was hurt.” (Sirico affidavit 1i 4.)
Sirico went on to state that “[a]t no time during this operation was the bucket of the backhoe ever above the level of [plaintiffs] head, and the bucket of the backhoe did not fall on or hit [plaintiff]. Rather, it was [plaintiff] who hit the bucket as a result of his own momentum.” (Sirico affidavit It 5.) “It appeared that when the pin puller came off the pin, his own momentum carried him.” (Sirico affidavit 1Í 6.)
In his complaint, plaintiff asserted Labor Law § 240 (1), § 241 (6), and § 200 causes of action, and by this motion, sought summary judgment against defendants.
Analysis
Labor Law § 240 (1) provides that:
“All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
In Ross v Curtis-Palmer Hydro-Elec. Co. (81 NY2d 494, 500-501 [1993]), the Court of Appeals addressed the nature of the occupational hazards to which Labor Law § 240 (1) was addressed:
“Noting that the statute ‘ “is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed” ’ (Koenig v Patrick Constr. Corp., 298 NY 313, 319, quoting Quigley v Thatcher, 207 NY 66, 68), we held in Rocovich v Consolidated Edison Co. [78 NY2d 509] that Labor Law § 240 (1) was aimed only at elevation-related hazards and that, accordingly, injuries resulting from other types of hazards are not compensable under that statute even if proximately caused by the absence of an adequate scaffold or other required safety device . . .
“The ‘special hazards’ to which we referred in Roco *604 vich, however, do not encompass any and all perils that may be connected in some tangential way with the effects of gravity. Rather, the ‘special hazards’ referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured (see, De Haen v Rockwood Sprinkler Co., 258 NY 350). In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person. The right of recovery afforded by the statute does not extend to other types of harm, even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold, stay or hoist.”
Thus, in Narducci v Manhasset Bay Assoc. (96 NY2d 259 [2001]), Labor Law § 240 (1) did not apply when a worker on a scaffold was struck by a falling window totally unrelated to the work that he was performing. It applied, however, in Malloy v Madison Forty-Five Co. (13 AD3d 55 [1st Dept 2004]), where the operator of a backhoe was struck by a metal beam it had transferred into an adjacent dumpster. The Appellate Division, First Department (at 56), held that Labor Law § 240 (1) applied because “defendants’ failure to provide adequate hoisting devices forced plaintiff to drop the beams into dumpster, rather than placing them there.” Likewise, in Sharp v Scandic Wall Ltd. Partnership (306 AD2d 39 [1st Dept 2003]), the Court held that the injury resulting from the failure to properly place and operate a hoisting device to lower an elevator to ground level was covered under Labor Law § 240 (1). The plaintiff in Sharp was standing on top of the elevator. The Court noted that
“[w]hile the case is unusual in that the load being hoisted was at the same level as the injured worker, it remains that plaintiffs injuries were the immediate result of ‘the effects of gravity’ . . . and the ultimate result of the lack of a hoist properly placed and operated so as to afford the protection required by the statute.” (Id. at 40.)
Here, viewing defendants’ version of the accident in the light most favorable to them, the injury was nonetheless the immediate result of the effect of gravity and the ultimate result of a hoist that did not provide the required protection to do the job; *605 that is, according to Sirico, “[i]t appeared that when the pin puller came off the pin, [plaintiffs] own momentum carried him.” Whether the bucket hit him or he hit the bucket is of no moment. The fact remains that he was holding on to the cord, and was “carried” when the hoisting mechanism failed. It is also irrelevant that what caused the injury was the hoisting mechanism itself. (Gabriel v Boldt Group, Inc., 8 AD3d 1058 [4th Dept 2004].) Accordingly, plaintiff has established his prima facie entitlement to summary judgment on his Labor Law § 240 (1) claim, and the burden thus shifted to defendant to raise triable issues of fact.
According to defendants’ expert, Labor Law § 240 (1) does not apply to the facts of this case because the rods were being “pried” off the ground rather than being hoisted off the ground over plaintiffs head. As this court previously noted in defendants’ motion to dismiss the complaint (motion sequence No. 1), however, this argument lacks merit. Hoisting is defined as “to raise or haul up with a mechanical apparatus.” (American Heritage College Dictionary [3d ed].) That is exactly what happened in this case. Metal rods approximately three feet long and two inches in diameter that had been imbedded into the ground about six inches were being hauled up by a mechanical apparatus. And, according to Sharp, the load did not have to be lifted over plaintiffs head. Rather, what is required is that the injury was caused by the effect of gravity and the lack of a proper hoist. Thus, based on the foregoing, plaintiff is granted summary judgment on liability against defendants on his Labor Law § 240 (1) claim.

 According to defendants, no company with the name “Barney Skanska USA” had anything to do with the project. A company named Barney Skanska Construction Company was one of two members of the design/builder joint venture that was merged into defendant Skanska USA.