■ ANTHONY ROBERTS et al., Respondents-Appellants, v GENERAL ELECTRIC COMPANY, Defendant and Third-Party Plaintiff-Appellant-Respondent, et al., Defendant. UE&C CATALYTIC, a Division of RAYTHEON CONSTRUCTORS, INC., Third-Party Defendant-Appellant-Respondent. [723 NYS2d 243] —Lahtinen, J. Cross appeals from an order of the Supreme Court (Ceresia, Jr., J.), entered December 6, 1999 in Rensselaer County, which, *inter alia*, granted plaintiffs' motion for partial summary judgment on the issue of liability pursuant to Labor Law § 240 (1) and partially granted a motion by defendant General Electric Company for summary judgment dismissing the complaint against it.

---

Plaintiff Anthony Roberts was injured while employed as an asbestos handler by third-party defendant, UE&C Catalytic, a division of Raytheon Constructors, Inc. (hereinafter Raytheon). Raytheon had contracted with defendant General Electric Company (hereinafter GE) to remove asbestos insulation from several chemical tanks at a GE facility in the Town of Waterford, Saratoga County. GE had also employed defendant Failsafe, Inc. to act as an independent project administrator and air quality monitor.

The cylindrical chemical tanks involved were 8 to 10 feet in diameter and approximately 18 to 20-feet long. The tanks were mounted horizontally on concrete stands approximately four feet off the floor. The asbestos removal process involved workers positioned on top of the tanks cutting stainless steel support bands to allow pieces of asbestos insulation to fall 12 to 14 feet to the floor where other workers would retrieve, bag and remove them. Roberts was injured when a falling piece of asbestos struck him on the shoulder.

Roberts and his wife, derivatively, commenced this action against GE alleging negligence and liability under Labor Law §§ 200, 240 (1) and § 241 (6). GE commenced a third-party action against Raytheon and Failsafe seeking indemnification, and Raytheon and Failsafe interposed cross claims against one another. Thereafter, plaintiffs apparently amended the complaint to include Failsafe as a direct defendant.

Upon various motions by the parties, Supreme Court granted summary judgment to plaintiffs on the Labor Law § 240 (1) claim against GE, granted summary judgment to GE dismissing the first (negligence/Labor Law § 200) and third (Labor Law § 241 [6]) causes of action and established that Raytheon owed GE common-law and contractual indemnification. Raytheon and GE now appeal—by joint brief—challenging that portion of Supreme Court's order granting plaintiffs summary judgment on the Labor Law § 240 (1) claim and denying their motions seeking dismissal of that cause of action. Plaintiffs cross appeal only from that part of the order that granted GE's motion for summary judgment dismissing the Labor Law §§ 200 and 241 (6) causes of action.*

Turning first to plaintiffs' Labor Law § 240 (1) cause of action, it is settled that this absolute liability statute is to be construed as liberally as it needs to be in order to accomplish its intended purpose of protecting workers from elevation-

---

* Plaintiffs have abandoned their appeal with respect to the Labor Law § 200 cause of action and, accordingly, that issue will not be addressed.

related risks at work sites (*see, Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520-521; *Koenig v Patrick Constr. Corp.*, 298 NY 313, 319; *Quigley v Thatcher*, 207 NY 66, 68; *see also, Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500). However, recognizing the statute does not encompass "*any and all* perils that may be connected in some tangential way with the effects of gravity" (*Ross v Curtis-Palmer Hydro-Elec. Co., supra*, at 501), we must determine whether Labor Law § 240 (1) was designed to prevent the type of accident which caused Roberts' injury (*see, id.*, at 501).

Initially, we note that Roberts was engaged in "cleaning" a "structure," an activity contemplated by Labor Law § 240 (1). We next consider whether the circumstances surrounding Roberts' work subjected him to the sort of risks which Labor Law § 240 (1) was intended to obviate, which have been identified by the Court of Appeals as those risks "limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Elec. Co., supra*, at 501; *see, Melo v Consolidated Edison Co.*, 92 NY2d 909, 911-912; *Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514). In our view, the facts of this case support the conclusion that the falling asbestos that struck Roberts was inadequately secured, thus creating a risk covered by Labor Law § 240 (1). We further conclude that any number of the safety devices enumerated in the statute, had they been furnished, would have prevented the dangerous free fall of the asbestos without unduly impeding the progress of the work that Roberts and his co-workers were engaged in at the time of the accident. Consequently, the failure to provide any safety device was a proximate cause of the accident (*see, Zimmer v Chemung County Performing Arts, supra*, at 521), convincing us to agree with Supreme Court that plaintiffs are entitled to partial summary judgment on the issue of liability as against GE on this cause of action.

Our recent decision in *Corey v Gorick Constr. Co.* (271 AD2d 911) does not require a different holding as it involved a safety device (a backhoe) which functioned as intended. Moreover, when the facts here are examined, as they must be, from the viewpoint of protecting workers, it is simply irrelevant whether the falling asbestos was intentionally or negligently released where the facts otherwise support the application of the provisions of Labor Law § 240 (1) (*see, Campanella v St. Luke's Roosevelt Hosp.*, 247 AD2d 294, 295; *Brust v Estee Lauder*, 184 AD2d 474).

We further agree that Supreme Court properly dismissed plaintiffs' Labor Law § 241 (6) cause of action. To establish a cause of action under that statute, a plaintiff must demonstrate that the defendant has violated a specific safety rule established by the Commissioner of Labor (*see, Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 503-505, *supra*). Here, plaintiffs rely on an alleged violation of the following regulation: "Every place where persons are required to work or pass that is normally exposed to falling material or objects shall be provided with suitable overhead protection. Such overhead protection shall consist of tightly laid sound planks at least two inches thick full size, tightly laid three-quarter inch exterior grade plywood or other material of equivalent strength" (12 NYCRR 23-1.7 [a] [1]). As Supreme Court noted, the purpose of this regulation is apparent, i.e., to protect workers who might be present in a work area subject to the general and unintended risk of falling objects, and has nothing to do with the work procedures employed here.

Peters and Mugglin, JJ., concur.

Spain, J. (concurring in part and dissenting in part). In reaching its decision that plaintiffs are entitled to summary judgment on the Labor Law § 240 (1) claim, the majority concludes that the statute was designed to prevent the type of accident which caused plaintiff Anthony Roberts' injury. Inasmuch as we interpret *Corey v Gorick Constr. Co.* (271 AD2d 911) as warranting a contrary determination, we respectfully dissent solely on that issue.

To be entitled to summary judgment on their Labor Law § 240 (1) claim, it was incumbent upon plaintiffs to establish that the alleged injuries were caused by the type of elevation-related hazard contemplated by that statute—perils which, as the majority recognizes, "are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501). Not all injuries resulting from falling objects result in Labor Law § 240 (1) liability inasmuch as "a violation of the statute cannot 'establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury' " (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513, quoting *DeHaven v Rockwood Sprinkler Co.*, 258 NY 350, 353). In our view, the activity which caused the injury—the planned dropping of the asbestos to an area of the floor cleared of workers—is not the type of hazard against which the statute was designed to protect.

In *Corey v Gorick Constr. Co.* (*supra*), decided by this Court after Supreme Court rendered its decision in this case, we held that Labor Law § 240 (1) was inapplicable where a descending beam struck the plaintiff after it had been purposefully released to a targeted site from a backhoe in accordance with a demolition plan. There, we stated that "[c]ritically * * * the beam did not fall as a result of an improper or defective mechanism in the backhoe's hoisting and clamping equipment; rather, the backhoe and its hoisting mechanism performed as intended to complete the task at hand, permitting the beam to be purposefully released so that it would forcefully fall to the ground and shed any debris" (*id.*, at 913).

As with the beam in *Corey*, here the asbestos was, as planned, purposefully released and allowed to fall to a targeted area below that had been cleared of workers. Unlike an injury caused by an object that is inadvertently dropped or released in some unexpected and preventable manner striking a worker below, the asbestos removal which resulted in Roberts' injury was accomplished precisely as intended. There is no suggestion that the release of the piece of material which struck Roberts was either premature or delayed, or that the nature of its descent to the floor below was otherwise unplanned.

Moreover, the chosen methodology of removing the asbestos i.e., allowing the asbestos to fall directly to the unoccupied floor rather than utilizing netting or some other device to prevent its free fall, does not automatically give rise to a Labor Law § 240 (1) cause of action. In this respect, we disagree with the majority's conclusion that "any number of the safety devices enumerated in the statute, had they been furnished, would have prevented the dangerous free fall of the asbestos without unduly impeding the progress of the work that Roberts and his co-workers were engaged in at the time of the accident." As we recognized in *Corey*, the statute "does not require that a particular methodology be employed to move materials or equipment at a construction/demolition site" (*id.*, at 913). Here, the project required that the asbestos be transferred from the tanks to the floor below. Rather than implementing some device to lower the asbestos, piece by piece, the contractor was entitled to opt to clear the area of workers—thus eliminating any elevation-related hazard associated with the task to workers below—and simply allow the asbestos to fall to the floor and, only then, allow the clean-up crew back in the area. To mandate the use of a Labor Law § 240 (1) safety device under such circumstances would unduly interfere with—and fail to recognize the complexity of—judgment calls made at a

construction/demolition site concerning the most practical way to accomplish a task.

The First Department cases on which the majority relies in support of the proposition that whether or not an object is intentionally released is not relevant to the Labor Law § 240 (1) analysis are analytically distinguishable. Each case involves plaintiffs injured by falling objects while working in an area where they were expected to be to accomplish the contemplated task, i.e., the projects, as planned, subjected them to the risks of being struck by falling objects that were inadequately or improperly secured (*see, Campanella v St. Luke's Roosevelt Hosp.*, 247 AD2d 294; *Brust v Estee Lauder*, 184 AD2d 474).

Here, by contrast, it is undisputed that the project plan did not call for Roberts to be in the vicinity of the dropped materials or subject him to the risks of being struck by a fallen object and, in that sense, he was not injured while performing an elevation-related task or by an object that was "improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501, *supra*; *see, McGuire v Independent Cement Corp.*, 255 AD2d 646, 649) so as to trigger the strict liability of Labor Law § 240 (1). Rather, the incident was initiated by the alleged failure to keep workers out of the drop site which, in our view, implicates principles of negligence which have no place in this strict liability statutory claim (*see, Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 523).

Accordingly, we would conclude that defendants are entitled to summary judgment on the Labor Law § 240 (1) claim.

Cardona, P. J., concurs. Ordered that the order is affirmed, without costs.