OPINION OF THE COURT
Edgar C. NeMoyer, J.
This claim occurred on June 19, 1996, while claimant, who was employed by M. Falgiano Construction, was working on a bridge rehabilitation project on Hyde Park Boulevard, Niagara Falls, New York. The construction site was owned by the defendant. The Hyde Park Boulevard bridge carries a four lane highway over a set of railroad tracks. The rehabilitation project involved resurfacing the roadway, installing new light posts, and removing and replacing various sections of the bridge. M. Falgiano Construction had a staging area and job trailer at the northwest corner of the bridge and below it. In order to access the bridge from this staging area, claimant and coworkers were required to walk up a steep earth ramp which led to the bridge. This embankment rose approximately 40 feet *234 from beneath the bridge to the bridge surface. Because of the continued use of this ramp, the grass on it became worn away, and it became a dirt ramp. On June 19, 1996, this ramp was wet and somewhat muddy from rain the previous days. As claimant was descending the ramp the afternoon of June 19, 1996, he slipped on the wet, muddy surface, his feet went out from under him, and claimant fell to the ground on his back. As a result of this fall, claimant sustained injuries. Claimant maintains the defendant, as owner of the property, was negligent because it failed to provide him with reasonable and adequate protection and safety in the workplace, in violation of Labor Law § 241 (6).
Claimant had been a union carpenter since 1982. He testified he was working as a union carpenter on June 19, 1996 for his employer, M. Falgiano Construction, on a project to rebuild a bridge, which passed over railroad tracks on Hyde Park Boulevard, Niagara Falls, New York. According to claimant, he started working on this job in April 1996. Claimant stated his employer put a construction trailer on the project at the base of the embankment leading to the bridge surface above it. This area was the staging area where employees would gather on a daily basis to go back and forth to the work site above them. Claimant testified that in order to get from the staging area to the work site on the bridge, it was necessary to walk up and down a steep earth ramp. This was the means of access to the work site, which had been provided by M. Falgiano Construction for its employees. According to claimant, this was the only way to reach the work site at bridge level without leaving the job site. He stated this was the most direct route to the job site. Claimant testified everyone associated with this job used this embankment or ramp to get to bridge level and back to the staging area. Claimant estimated the length of the earth pathway from the staging area to bridge level was about 40 feet. He maintained this ramp initially started out as a grass pathway, but through use became dirt, which would become muddy and slippery when wet. The testimony indicated this pathway was at a 30 to 45 degree angle. Exhibits 2 through 9 are photographs of the pathway from the staging area to the bridge surface. The wooden planking on the pathway in the photographs was not present on the date of the accident. These photographs depict a steep vertical pathway up the side of a hill from the staging area to the bridge surface. The court would estimate the angle of the pathway to be at least 35 to 40 degrees or a grade of 35% to 40%.
Claimant testified he was working on the north side of the bridge during the morning of June 19, 1996, building forms where concrete had been removed. According to claimant, it *235 had rained the day before his accident, which caused the earth ramp to the job site to be slippery from the mud surface, and the continued use by workers. Claimant stated this accident occurred after lunch, sometime between 1:00 p.m. and 2:00 p.m. According to claimant, he was using the earth ramp for the fourth time that day, when this accident occurred. Claimant stated he was walking from bridge level to the staging area to obtain a tool at the construction trailer. He testified that as he was descending the embankment, his feet went out from under him, and he fell to the ground on his back. Claimant stated this occurred when he was about halfway down the ramp, where it became steeper. According to claimant, he immediately reported the accident to his supervisor.
In June 1996 Daniel H. Benjamin was a civil engineer I employed by the New York State Department of Transportation (NYSDOT). Mr. Benjamin testified he was the engineer in charge for the NYSDOT for the Hyde Park bridge project. According to Mr. Benjamin, he was on the job site daily, in the project office, which was approximately one block south of the bridge. He stated that for workers to get from the staging area to the construction site on the bridge, they would be required to walk up the earth embankment or ramp, which he estimated to be at a 30 to 45 degree angle. He said there was no other direct route to the construction site.
Mr. Benjamin was required to keep a daily diary on the job site (exhibit 15). His diary for June 17, 1996 indicated the morning was overcast, with rain in the afternoon. The diary further reflected it rained all day on June 18, 1996. On the day of the accident, June 19, 1996, Mr. Benjamin recorded in his diary that there was rain in the morning, and the afternoon was overcast. Mr. Benjamin believed the use of this earth ramp to access the job site and staging area would pose a risk of falling for workers using it. He maintained this risk would have been increased by the weather conditions from June 17, 1996 through June 19, 1996.
Charles Palisano has been a construction safety engineer since 1968. From 1968 through 1975, Mr. Palisano was employed by the State of New York as a construction safety inspector for construction work in Niagara County. Throughout the years, he has been employed with different firms as a construction safety engineer or officer, and is currently employed in that capacity for the job corps in Medina, New York. According to Palisano, he has a bachelor’s degree in construction safety technology, which was obtained through correspondence courses. He testified he was familiar with the Industrial Code of New York, and more particularly 12 NYCRR part 23 and its sections. Mr. Palisano testified that prior to his *236 testimony he made two on-site inspections at the Hyde Park bridge project. It was Mr. Palisano’s opinion, that under the circumstances presented by this accident, the embankment or ramp for access to and from the job site was unsafe. He believed workers using it could easily slip.
Section 241 (6) of the Labor Law imposes a nondelegable duty upon owners and contractors to provide reasonable and adequate protection and safety to construction workers. (Comes v New York State Elec. & Gas Corp., 82 NY2d 876.) This Labor Law section reads as follows:
“All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.”
However, in order to establish a cause of action under this section, claimant must allege and prove the defendant violated a rule or regulation of the New York Industrial Code, which sets forth a specific standard of conduct, as opposed to a general reiteration of common-law principles. (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494.) Claimant relies on Industrial Code (12 NYCRR) § 23-1.7 (d) and (f) to establish his claim under Labor Law § 241 (6). Both of these sections present a specific standard, and therefore, if applicable, could establish a claim pursuant to Labor Law § 241 (6). (Gielow v Rosa Coplon Home, 251 AD2d 970; Adams v Glass Fab, 212 AD2d 972.)
Looking first at 12 NYCRR 23-1.7 (f), this Industrial Code regulation provides as follows: “Vertical passage. Stairways, ramps or runways shall be provided as the means of access to working levels above or below ground except where the nature or the progress of the work prevents their installation in which case ladders or other safe means of access shall be provided.” However, this regulation must be read in pari materia with Industrial Code (12 NYCRR) § 23-1.23, “Earth ramps and runways.” Therefore, 12 NYCRR 23-1.23 is also necessarily before the court for consideration. This industrial regulation, in relevant parts, provides as follows:
“(a) Construction. Earth ramps and runways shall be constructed of suitable soil, gravel, stone or sim *237 ilar embankment material. Such material shall be placed in layers not exceeding three feet in depth and each such layer shall be properly compacted except where an earth ramp or runway consists of undisturbed material. Earth ramp and runway surfaces shall be maintained free from potholes, soft spots or excessive unevenness.
“(b) Slope. Earth ramps and runways shall have maximum slopes of one in four (equivalent to 25 percent maximum grades). * * *
“(d) Earth ramps and runways used by persons. Earth ramps and runways used by persons with or without wheelbarrows, power buggies, hand carts or hand trucks shall be at least 48 inches in width. Such ramps and runways more than four feet above the adjacent ground, grade or equivalent level shall be provided with safety railings constructed and installed in compliance with this Part (rule). The total rise of any continuous ramp or runway used by persons with or without wheelbarrows, power buggies, hand carts or hand trucks shall not exceed 12 feet unless such rise is broken by a horizontal section at least four feet in length every 50 feet.”
Defendant argues that the means of access provided by it for the workers on the Hyde Park bridge rehabilitation was a ramp within the meaning of 12 NYCRR 23-1.7. Defendant further maintains that 12 NYCRR 23-1.23 applies and permits it to provide a ramp of earthen material for its workers. According to defendant, this was all that was required of it, and this is what was provided for the workers, an earthen ramp for workers to travel back and forth from the staging area to the job site on the Hyde Park bridge above them. Consequently, defendant maintains it was in compliance with the relevant regulations of the Industrial Code, and should not be found in violation of Labor Law § 241 (6).
The court is in agreement with defendant only to the extent that it finds the means of access to and from the job site for the workers at the Hyde Park bridge rehabilitation project was a ramp, which could have been made from earthen materials. As such, it came within the requirements of 12 NYCRR 23-1.7 (f) and 23-1.23 (a), (b), (d). The fallacy of defendant’s argument is that it ignores the requirements set forth in 12 NYCRR 23-1.23 for earth ramps.
Subdivision (b) of 12 NYCRR 23-1.23 requires that the maximum slope permitted for an earthen ramp is one in four or equivalent to a 25% maximum grade. The ramp which *238 claimant was using exceeded a 25% grade. The credible testimony before the court places the grade of the ramp at the Hyde Park bridge project at anywhere from 30% to 45%. Exhibits 2 through 9 appear to the court to show a ramp, which far exceeds a 25% grade. Furthermore, subdivision (d) of 12 NYCRR 23-1.23 provides that such a ramp, utilized by claimant and his fellow coworkers, which is more than four feet above the adjacent ground, grade or equivalent level, must be provided with safety railings, constructed and installed in compliance with other regulations in the Industrial Code. The proof before the court indicated the ramp at the Hyde Park bridge project rose 40 feet above the adjacent ground level, and exhibits 2 through 9 confirm this. Once again, the ramp provided for claimant at the Hyde Park bridge construction project failed to comply with 12 NYCRR 23-1.23 (d), in that it had no safety railings. Finally, subdivision (d) provides that such a continuous ramp, as used by claimant and his coworkers, “shall not exceed 12 feet unless such rise is broken by a horizontal section at least four feet in length every 50 feet.” The ramp here easily exceeded a 12-foot rise, and was not broken by a horizontal section.
In light of the foregoing, the court finds that, while defendant did provide workers at the Hyde Park bridge rehabilitation project with an earthen ramp as a means of access to a working level above the ground, it violated 12 NYCRR 23-1.7 (f) and 23-1.23 in failing to adhere to the requirements for earthen ramps. The court further finds that this failure on the part of the defendant was the proximate cause of claimant’s accident, and therefore a violation of defendant’s nondelegable duty under Labor Law § 241 (6).
Also, inherent in 12 NYCRR 23-1.7 (f) is the requirement that defendant provide workers with a safe means of access to working levels above the ground. Whether the defendant provided a safe ramp for claimant and his coworkers to use is therefore a triable issue of fact to be determined by the court. (Sponholz v Benderson Prop. Dev., 273 AD2d 791.) Based upon all of the proof before the court, it appears the ramp provided by the defendant at the Hyde Park bridge project was unsafe. The ramp was a steep vertical incline up and down the side of the hill. In essence, it was nothing more than a dirt pathway. It was used on a daily basis by several workers going back and forth from the staging area to the elevated job site. As such, what started out as a grass earthen ramp became a dirt ramp. It was exposed to the elements, and when the ramp became wet from rain or other moisture, it became muddy and slippery. In the court’s view, this earth ramp, without any protective devices, was unsafe even when it was dry. But, add moisture and *239 mud to the ramp, and it became a dangerous means of access to an elevated working area. This unsafe condition was also a proximate cause of claimant’s accident on June 19, 1996.
Although the condition of the ramp on June 19, 1996 was open and obvious to anyone using it, the court does not attribute any comparative negligence to the claimant. This ramp was the most direct and only means of accessing the job site within the construction area for claimant and his coworkers. To access the job site by any other means would have required the workers to leave the job site. The court believes claimant and his coworkers had no other reasonable alternative but to use this ramp, which was unsafe and in violation of Labor Law § 241 (6) and 12 NYCRR 23-1.7 (f) and 23-1.23.
Since liability has been determined based upon the foregoing violations, it is not necessary for the court to reach the issue of the application of 12 NYCRR 23-1.7 (d) to this accident.
Based upon the foregoing, the court finds the defendant negligent and fully responsible for the injuries sustained by claimant on June 19, 1996, when he fell as previously described herein.