OPINION OF THE COURT
Diane L. Fitzpatrick, J.
Defendant moves this court for summary judgment pursuant to CPLR 3212. Claimant opposes the motion and cross-moves for permission to serve an amended/supplemental third bill of particulars pursuant to CPLR 3025 (b). The court also heard oral argument on the motions.[1]
The court grants claimant’s cross motion for permission to serve the amended/supplemental third bill of particulars because defendant has no objection. The violations of sections of the Industrial Code, raised for the first time in claimant’s amended/ supplemental third bill of particulars, will be addressed as part of this summary judgment motion since defendant’s arguments for dismissal are directed at these newly alleged violations as well.
This Labor Law claim arises from factual events about which the parties have little disagreement. On June 13, 2001, at approximately 10:30 a.m., while employed by Delaney Construction Company, claimant was injured as he assisted in a project[2] which involved lining old drainage pipes with plastic inserts. Delaney was under contract with the New York State Thruway Authority (hereinafter referred to as NYSTA) to clean and rehabilitate drainage culverts at 20 sites under the Thruway. As part of this contract, Delaney was to line or re-sleeve existing drainage pipes with plastic inserts (defendant’s exhibit J). The NYSTA contracted with Harza Engineering to supply a resident engineer for construction inspection of the project. The resident engineer was Richard Warren, who acted as an agent of the State on this project.
Delaney began work on the project in the fall of 2000. Pursuant to NYSTA project specifications, it was recommended that the pipe lining was to be pushed into the existing drainage pipe *933 (defendant’s exhibits I and F, at 31). This was accomplished at various locations, pursuant to the contract, prior to the subject incident. At the Fort Plain site, where claimant was injured, the existing drainage pipe was located at a failing slope, which caused the existing culvert pipe to have an uplift from the bottom of 3V2 to 4 feet. As a result, there was insufficient room, inappropriate grading, and right-of-way issues which prevented the lining from being pushed into the pipe. Therefore, Delaney established a pulling method which had been successful for inserting the first two or three sections of lining.
In order to pull the lining into the existing pipe, Delaney used a D6 bulldozer, placed at one end of the culvert pipe with a winch attached. A cable was attached to the winch which ran from the dozer through 400 feet of piping. A steel I-beam, with angles to hold it, was placed horizontally on the outside of the plastic insert pipe which was then attached to the cable. Claimant and another worker were inside the culvert pipe 200 feet apart to relay verbal directions to the bulldozer driver as the pipe lining was pulled to its intended location. After the pieces of the insert lining were pulled together, claimant would weld the seam closed.
On the day of the accident, claimant and his coworker were in the pipe as were the Harza resident engineer, Richard Warren; his assistant, Ryan Pedone; and Michael Krasowski, an employee of the NYSTA. Mr. Warren, his assistant, and Mr. Krasowski left the pipe when they heard the bulldozer start its engine. Mr. Warren’s deposition testimony indicated he was concerned about the danger if the cable snapped. Shortly thereafter, the I-beam buckled and was pulled into the pipe knocking into claimant approximately 40 to 50 feet from the pipe opening, causing severe injuries.
The claim and bills of particulars (which include the amended/ supplemental third bill of particulars authorized herein) set forth causes of action for violations of Labor Law §§ 240 (1), 241 (6) and § 200, and common-law negligence, as owner of the property. Claimant has withdrawn the Labor Law § 240 (1) cause of action.
Labor Law § 241 (6)
In order to succeed with a claim under section 241 (6) of the Labor Law, there must be proof of a violation of a sufficiently specific Industrial Code regulation (see, Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494 [1993]). Claimant asserts violations of Industrial Code (12 NYCRR) §§ 23-8.1, 23-8.2, and 23- *934 6.1 (d), (e) (2) and (h). After reviewing these specific Industrial Code sections, the court finds claimant’s section 241 (6) claim cannot be sustained as a matter of law.
Industrial Code subpart 23-8 pertains to mobile cranes, tower cranes and derricks. Section 23-8.1 provides the general provisions for stability and strength, inspection, footings, hoisting mechanisms, load handling, load hoisting, limitations on modifications, cast iron, moving parts, protection from the elements, wire ropes, and lubrication. Here, no crane or derrick was involved in claimant’s injury, and no load was being hoisted.[3] A bulldozer was used as part of a jerry-rigged operation to pull along at ground level pipe lining into existing culvert piping. This section is not applicable. Nor is section 23-8.2 applicable, which sets forth special provisions for mobile cranes.
Subpart 23-6 of the Industrial Code pertains to material hoisting. However, the regulation specifically excepts “cranes, derricks, aerial baskets, excavating machines used for material hoisting and fork lift trucks” (12 NYCRR 23-6.1 [a] [emphasis added]). Even if the pulling of the pipe lining into the existing pipe could be considered “material hoisting” which the court finds it is not, excavation machines (which a bulldozer is considered; see e.g. 12 NYCRR 23-9.2 [h] [1] [i]) are excluded from the application of this section of the Industrial Code.[4] Since none of the Industrial Code sections are applicable, claimant cannot establish his Labor Law § 241 (6) cause of action.
Common-Law Negligence, Labor Law § 200
The remaining theories for recovery are common-law negligence and Labor Law § 200, which is “a codification of the common-law duty of a landowner to provide workers with a reasonably safe place to work” (Lombardi v Stout, 80 NY2d 290, 294 [1992]). The landowner’s duty is conditioned upon authority to control the activity resulting in the injury (Comes v New York State Elec. & Gas Corp., 82 NY2d 876 [1993]). Thus, a landowner will only be held liable for injuries sustained by a contractor’s employees when the owner has either actual or constructive notice of the dangerous condition and has exercised supervisory control over the operation (Comes v New York State Elec. & Gas Corp., 82 NY2d at 877; Lombardi v Stout, 80 NY2d at 294-295; Dennis v City of New York, 304 AD2d 611 [2003]; *935 Blysma v County of Saratoga, 296 AD2d 637 [2002]; Jurgens v Whiteface Resort on Lake Placid, 293 AD2d 924 [2002]).
Undisputedly, NYSTA hired an engineer, Mr. Warren, as a construction inspector to make sure the work was completed in conformity with the contract specifications. Mr. Warren was at the site daily, and he had the authority to issue a stop work order if the contractor was not complying with the project specifications or if he saw something unsafe. Mr. Warren had issued only one stop work order on this project when grout was being placed in rivets, and he was concerned there was insufficient grout being applied.
It is clear that Mr. Warren was aware of the methods Delaney was using to install the pipe lining at this site; as he, his assistant, and another NYSTA employee were in the culvert with claimant when the pulling procedure was about to begin, but they exited prior to claimant’s injury. Further, claimant’s injuries were caused by the method employed to insert the pipe lining into the drainage pipe at this location and not as a result of any defect or dangerous condition on the property.
Under these circumstances, the court does not find that there are any issues of fact which require resolution after trial; and based upon the undisputed facts, the State’s general supervisory authority on this project is insufficient to support a finding of liability under Labor Law § 200. Neither Mr. Warren, his assistant, nor any other state employee gave claimant direction regarding his job duties. Claimant testified all job assignments and direction came from Delaney’s superintendent, Bill Stock. There is no indication the State had any involvement in the decision to pull, rather than push, the pipe lining into the culvert or the manner in which this decision would be implemented; nor is there any assertion that the State provided any of the equipment used for this project. Moreover, Mr. Warren’s general authority to issue a stop work order for failure to comply with project specifications or safety procedures is insufficient to establish a question of fact regarding whether defendant has supervisory control (see, Tambasco v Norton Co., 207 AD2d 618, 621 [1994], lv dismissed 85 NY2d 857 [where defendant’s contract with claimant’s employer reserved right to oversee the work and demand adherence to safety standards, including the right to discharge employees for noncompliance was insufficient to hold a general contractor liable under Labor Law § 200]; see also, Panetta v Beltrone Constr. Co., 226 AD2d 886 [1996]; Gray *936 v Balling Constr. Co., 239 AD2d 913 [1997]). Delaney employed its own safety supervisor.
Mr. Warren’s notice of the methods Delaney was using to pull the pipe lining into the culvert, without the requisite supervisory control, does not establish liability under Labor Law § 200 or the common law (Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 878 [1993]).
Accordingly, defendant’s motion for summary judgment is granted. The claim is dismissed.

. The court notes for the record that counsel for both parties provided exemplary oral arguments.

. New York State Thruway Authority project number TAS00-56.

. See, defendant’s exhibit G, at 66, lines 7-13.

. See, affidavit of Ernest J. Gailor, P.E. (defendant’s exhibit K).