Lema v Iris Erenstein Props., L.L.C. (2024 NY Slip Op 51454(U))

[*1]

Lema v Iris Erenstein Props., L.L.C.

2024 NY Slip Op 51454(U)

Decided on October 26, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 26, 2024
Supreme Court, Kings County

Jose Lema, Plaintiff,

against
Iris Erenstein Properties, L.L.C., ALLSTATE SPRINKLER CORP., SCHUR MANAGEMENT CO., LTD, JORDAN SCHUR PROPERTIES, L.L.C., 231/249 WEST 39TH STREET CORP., and MALCOLM M. BESSEN, EVAN R. BESEN and JAMES M. BESSEN, individually, and as owners of the subject-premises, Defendants.
IRIS ERENSTEIN PROPERTIES L.L.C., Third-Party Plaintiff,
against
ALLSTATE SPRINKLER CORP., Third-Party Defendant.

Index No. 504685/15

Law Offices of Michael S. Lamonsoff, PLLC, New York City (Romina Tominovic of counsel), for plaintiff.
Ahmuty, Demers & McManus, New York City (Steven D. Zecca of counsel), for defendant & third-party defendant Allstate Sprinkler Corp.
Lewis Brisbois Bisgaard & Smith, LLP, New York City (Ashley N. Heffernan of counsel), for defendant & third-party plaintiff Iris Erenstein Properties, L.L.C. and other defendants.

Aaron D. Maslow, J.

[*2]The following e-filed papers used herein:
Notice of Motion/Cross Motion and Affidavits (Affirmations) Annexed: NYSCEF Doc Nos. 512-533, 534-570, 579-595
Opposing Affidavits (Affirmations): 571-575, 597-599, 603-605, 606-610, 633-641, 642-649
Affidavits/Affirmations in Reply: 576-578, 650-653, 656-658, 659-664
Upon the foregoing papers, plaintiff Jose Lema (plaintiff) moves, in motion (mot.) sequence (seq.) 27, for an order awarding him summary judgment, pursuant to CPLR 3212, under his Labor Law §§ 240 (1) and 241 (6) claims against defendants Allstate Sprinkler Corp. (Allstate), Iris Erenstein Properties, L.L.C., 231/249 West 39th Street Corp., Jordan Schur Properties, LLC, Malcolm M. Bessen, Evan R. Bessen, and James M. Bessen (collectively, Ownership Defendants), and defendant Schur Management Co., LTD (Schur). Ownership Defendants and Schur move, in mot. seq. 28, for an order granting them leave to renew their prior summary judgment motion, and upon granting such leave, seek an order awarding them summary judgment dismissing plaintiff's Labor Law §§ 200, 240 (1), 241 (6), and common-law negligence claims against them. Ownership Defendants and Schur further move for summary judgment dismissing Allstate's cross-claims against them.[FN1]
Allstate moves, in mot. seq. 29, for an order, pursuant to CPLR 2221(e), granting it leave to renew its prior summary judgment motion, and upon granting such leave, Allstate seeks an order awarding it summary judgment dismissing plaintiff's claims and all third-party claims and cross-claims asserted against it.
Background Facts and Procedural History
On January 14, 2015, plaintiff sustained various injuries after falling a distance of approximately 30 feet while performing work involving the partial demolition and reconstruction of a water tank on the roof of a 12-story commercial building located at 231-239 West 39th Street in Manhattan (the building). The water tank in question fed the building's standpipe system. At all relevant times, the building was owned by Ownership Defendants and managed by Schur.
On or about December 23, 2014, at Allstate's request, non-party Rosenwach Tank Co., L.L.C. (Rosenwach) generated a written purchase order whereby it proposed to perform certain work on the water tank including the removal and replacement of "the defective flat and conical covers from the tank." In this regard, although Allstate had a contract with Schur to service and maintain the building's sprinkler system, this contract did not cover work on the water tank. On or about January 5, 2015, Allstate and Schur entered into a written contract whereby Allstate agreed to "furnish all necessary labor and material" to perform the work set forth in the purchase order. On January 6, 2015, Allstate hired Rosenwach to perform the work by signing the [*3]purchase order.[FN2]

The water tank in question, which was constructed of wood, was round, and approximately 12 feet high and 12 feet wide. The tank itself sat on top of a 20-foot-tall metal support structure. The top of the tank was covered by a round cone-shaped structure that was also constructed of wood and covered with roofing paper (the conical). The conical had a trap door that allowed workers to access the tank. In this regard, the conical had a wooden floor (the flat) covering the top of the tank that workers could stand on when they climbed through the trap door. In order to gain access to the tank and conical, it was necessary to climb a permanently affixed metal ladder that ran from the roof of the building to the base of the conical and trap door. According to plaintiff, the portion of the ladder that ran from the roof to the top of the tank support structure was at a slight angle. However, the part of the ladder that ran from the top of the support structure to the conical was vertical. Two curved metal rods or "goosenecks" ran from the top of the ladder to the conical. One end of each gooseneck was bolted to the top of the ladder's side rails, and the other end ran through holes in the conical on either side of the trapdoor. The ends of the goosenecks that ran through the conical were threaded, which enabled them to be affixed to the conical using two nuts, one of which was inside the conical, and the other outside the conical. Based upon photographs submitted to the court, it appears that the goosenecks were used as handrails by workers entering or exiting the trap door.
The day before the accident, plaintiff, who was employed by Rosenwach as a carpenter, went to the building in order to inspect the tank, take measurements, and determine what tools and materials he would need in order to remove and replace the tank's conical and flat. On the morning of the accident, plaintiff and his coworker "Paul" arrived at the building and were brought to the roof in a freight elevator by the building superintendent. According to plaintiff, he was not provided with any safety harnesses and he had previously asked his Rosenwach supervisor if a scaffold could be provided, but was told that the building owner did not want to pay for a scaffold rental. After arriving on the roof, plaintiff climbed the affixed ladder to the tank and began dismantling the existing conical and flat. When taking the conical apart, plaintiff used a wrench to remove the nuts from the threaded ends of the goosenecks so that the pieces of wood, which the goosenecks were affixed to, could be removed. After he had completely dismantled the existing conical and flat, plaintiff started the task of constructing a new conical and flat using plywood boards and other materials that had previously been delivered to the jobsite. When constructing the conical, plaintiff drilled holes through two boards so that the goosenecks could be affixed to the new conical. At the time of the accident, plaintiff and his coworker had nearly completed their work and plaintiff was attempting to insert the threaded ends of the gooseneck through the holes in the conical so that it could be affixed to the structure [*4]using the nuts that he had previously removed. When performing this work, plaintiff held a gooseneck and straddled the trap door opening, with his left foot on the top rung of the ladder and his right foot on the flat inside the tank. As plaintiff attempted to maneuver one of the threaded ends of the goosenecks through the hole in the conical, the gooseneck broke. As a result, plaintiff lost his balance and fell some thirty feet to the roof below. When questioned at his deposition, plaintiff was unsure whether the gooseneck broke at the point where it was bolted to the ladder, or at some other point. However, plaintiff testified that a piece of the gooseneck that he was holding landed on the roof next to him.
On April 20, 2015, plaintiff commenced the instant action against Iris Erenstein Properties, LLC by filing a summons and complaint alleging that the injuries he sustained in his fall were caused by violations of Labor Law §§ 200, 241 (1) and 241 (6). On January 18, 2016, plaintiff commenced a second action against Allstate in which he also alleged violations of Labor Law §§ 200, 241 (1) and 241 (6). On January 28, 2016, Iris Erenstein Properties, LLC, commenced a third-party action against Allstate seeking common-law indemnification, contractual indemnification, and damages for breach of contract. In an order dated October 13, 2016, Hon. Paul Wooten, J.S.C., granted plaintiff's motion to consolidate the two actions. Thereafter, plaintiff filed separate complaints against Schur and the remaining Ownership Defendants, and those actions were ultimately consolidated into the instant action.
On May 15, 2022, plaintiff moved, in mot. seq. 22, for summary judgment against Ownership Defendants/Schur under his Labor Law §§ 240 (1) and 241 (6) causes of action. On September 23, 2022, Ownership Defendants/Schur moved, in mot. seq. 24, for summary judgment dismissing plaintiff's complaint against them and further moving for summary judgment under their third-party claims against Allstate. On September 26, 2022, Allstate moved, in mot. seq. 25, for summary judgment dismissing plaintiff's complaint against it and further moved for summary judgment dismissing all third-party claims against it. On May 18, 2023, plaintiff cross-moved, in mot. seq. 26, for summary judgment against Allstate under his Labor Law §§ 240 (1) and 241 (6) causes of action. In an order dated November 8, 2023, the court denied all four of these motions without prejudice to renew for failure to comply with the court's Part Rules which require the submission to the court of hard copies of motions filed on NYSCEF in the event the party's pages exceed 75 pages (Ramzy v Safdi Plaza Realty Inc., 80 Misc 3d 1236[A], 2023 NY Slip Op 51175[U] [Sup Ct, Kings County 2023]). Thereafter, the parties made the motions now before the court in compliance with the court's Part Rules.
CPLR 2221 (e)
As an initial matter, the court notes that Ownership Defendants/Schur and Allstate seek leave to renew their prior motions for summary judgment pursuant to CPLR 2221 (e) but plaintiff's notice of motion fails to seek such relief. In this regard, Ownership Defendants/Schur argue that plaintiff's failure to seek leave to renew requires that the court deny plaintiff's motion for summary judgment inasmuch as it amounts to an improper successive motion for summary judgment. However, the court finds this argument to be without merit. "A motion for leave to renew 'shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination' " (Deutsche Bank Natl. Trust Co. v Cincu, 228 AD3d 825, 826-827 [2d Dept 2024], quoting CPLR 2221 [e] [2]). Here, the motions before the court are not based upon new facts or a change in law that would change the result of the court's November 8, 2023 order. [*5]Indeed, the court did not address the facts or law underlying the claims; it merely denied the motions without prejudice to refiling the motions based upon the parties' failure to comply with the court's Part Rules. Thus, it was unnecessary for plaintiff to seek leave to renew pursuant to CPLR 2221 (e). In any event, to the extent that it was necessary for plaintiff to seek leave to renew, the court disregards this harmless mistake pursuant to CPLR 2001. None of the parties were prejudiced by plaintiff's alleged error and plaintiff's instant motion is in compliance with the court's Part Rules (see Grskovic v Holmes, 111 AD3d 234, 242-243 [2d Dept 2013]). Further, to the extent that it was necessary for Ownership Defendants/Schur and Allstate to seek leave to renew their prior motions, such leave is granted.
Timeliness of Plaintiff's Summary Judgment Motion Against Allstate
Allstate argues that the court must deny plaintiff's motion for summary judgment against it inasmuch as his original cross-motion for summary judgment against it (which was denied without prejudice by the court) was filed more than 60 days after the note of issue was filed in violation of Kings County Supreme Court Uniform Civil Term Rules Part C (6).[FN3]
In opposition to Allstate's argument, plaintiff maintains that his original cross-motion for summary judgment against Allstate was made in response to Ownership Defendants' timely motion. Further, plaintiff contends that Allstate waived any claim regarding untimeliness when it entered into a June 12, 2023 stipulation which provided dates for responsive papers to the motions.
"Pursuant to the Uniform Civil Term Rules of the Kings County Supreme Court, the parties [are] required to move for summary judgment no later than 60 days after the filing of the note of issue, unless they obtained leave of court upon good cause shown" (Souffrant v M&K Real Estate Assoc., LLC, 225 AD3d 914, 915 [2d Dept 2024], citing Kings County Supreme Court Uniform Civil Term Rules, part C, rule 6). It is undisputed that plaintiff's original cross-motion for summary judgment against Allstate (mot. seq. 26) was filed more than 60 days after the note of issue was filed. "However, an untimely cross motion for summary judgment may nevertheless be considered by the court 'where a timely motion was made on nearly identical grounds' " (Dojce v 1302 Realty Co., LLC, 199 AD3d 647, 649-650 [2d Dept 2021], quoting Sikorjak v City of New York, 168 AD3d 778, 780 [2d Dept 2019]). All of the issues raised in plaintiff's untimely motion for summary judgment against Allstate (mot. seq. 26) were raised in plaintiff's timely motion for summary judgment against Ownership Defendants/Schur (mot. seq. 22), Ownership Defendants/Schur's timely motion for summary judgment against plaintiff (mot. seq. 24), and Allstate's timely motion for summary judgment against plaintiff (mot. seq. 25). Thus, the court could have considered plaintiff's untimely cross-motion for summary judgment as it was nearly identical to the timely motions before the court. Consequently, the court may now consider plaintiff's re-filed motion for summary judgment against Ownership Defendants/Schur and Allstate under his Labor Law §§ 240 (1) and 241 (6) causes of action.
Allstate's Liability Under the Labor Law
Separate and apart from the issue of whether or not plaintiff's injuries were caused by violations of Labor Law §§ 200, 241 (6), and/or 240(1), Allstate raises the argument that it is not [*6]subject to liability under any of these statutes since it was not a proper Labor Law defendant. In particular, Allstate maintains that it did not have the authority to supervise and control the work that plaintiff was carrying out at the time of the accident notwithstanding the fact that it hired Rosenwach. Instead, Allstate argues that it merely acted as an intermediary between Schur and Rosenwach to arrange for the performance of the work on the water tank and that none of the parties ever intended that Allstate would carry out or supervise the work. In support of this contention, Allstate points to the deposition testimony of its president and chief executive officer, Adam Goodrich. Specifically, Allstate notes that Mr. Goodrich testified that its contract with Schur involved the maintenance and repair of the building's sprinkler system, and did not encompass making repairs to the water tank. Mr. Goodrich further testified that unlike Rosenwach, Allstate had no expertise in the area of water tank repairs and that both Allstate and Schur were fully aware that Rosenwach was the party that would actually perform the work. In addition, Allstate notes that Mr. Goodrich testified that Allstate did not supervise the work performed by Rosenwach and was not present while the work was being performed. Finally, Allstate maintains that its agreement with Schur did not contain any language specifically stating that it would actually perform the work on the water tank.
In opposition to Allstate's argument that it is not subject to liability under the Labor Law, Ownership Defendant/Schur and plaintiff all point to the language in the January 5, 2015 contract between Schur and Allstate. In particular, under this agreement, Allstate agreed that it would "furnish all necessary labor and material to perform the following scope of work," which included "[r]emove and replace the defective flat and conical covers from the tank" and "install a new flat cover" and "install a new conical cover." Ownership Defendants/Schur and plaintiff further note that Allstate subsequently hired plaintiff's employer Rosenwach to perform this work. Thus, Ownership Defendants/Schur and plaintiff maintain that Allstate is subject to liability under the statutes as a general contractor or statutory agent of the owner since it agreed to carry out the very work that plaintiff was performing at the time of the accident and subsequently delegated this responsibility to plaintiff's employer, Rosenwach.
"A prime contractor hired for a specific project is subject to liability under [the Labor Law] as a statutory agent of the owner or general contractor only if it has been 'delegated the . . . work in which plaintiff was engaged at the time of his injury,' and is therefore 'responsible for the work giving rise to the duties referred to in and imposed by [the statutes]' " (Coque v Wildflower Estates Devs., Inc., 31 AD3d 484, 488 [2d Dept 2006], quoting Russin v Louis N. Picciano & Son, 54 NY2d 311, 318 [1981]). Further, in order to impose liability against a defendant as a statutory agent of the owner or general contractor, "the defendant must have the authority to supervise or control the activity bringing about the injury so as to enable it to avoid or correct the unsafe condition" (Rodriguez v JMB Architecture, LLC, 82 AD3d 949, 951 [2d Dept 2011]). However, "[w]hether the [defendant] actually supervised plaintiff is irrelevant" (Weber v Baccarat, Inc., 70 AD3d 487, 488 [1st Dept 2010]). This "interpretation of statutory 'agent' language appropriately limits the liability of a contractor or owner for job site injuries to those areas and activities within the scope of the work delegated, or, in other words, to the particular agency created" (Russin, 54 NY2d at 318).
Here, it is undisputed that Schur contracted Allstate to perform the work on the water tank and that Allstate then delegated all of this work to plaintiff's employer Rosenwach when it signed the purchase order. Thus, the work that plaintiff was performing at the time of the accident was within the scope of the work which Schur initially delegated to Allstate. [*7]Furthermore, contrary to Allstate's argument, it had the authority to control and supervise this work inasmuch as it directly hired plaintiff's employer to perform the work (see Mitchell v T. McElligott, Inc., 152 AD3d 928, 931 [3d Dept 2017]; Nasuro v PI Associates, LLC, 49 AD3d 829, 831 [2d Dept 2008]; cf. Nascimento v Bridgehampton Constr. Corp., 86 AD3d 189, 192-194 [1st Dept 2011]). While it is true that Allstate did not actually exercise any control or authority over the work, as noted above, this is irrelevant. Accordingly, Allstate is subject to liability under the Labor Law as a statutory agent of the owner.

 Plaintiff's Labor Law § 240 (1) Claim
Plaintiff moves for summary judgment against Ownership Defendants/Schur, and Allstate under his Labor Law § 240 (1) cause of action. At the same time, Ownership Defendants/Schur and Allstate move for summary judgment dismissing this cause of action. In support of his motion, plaintiff points to his uncontroverted deposition testimony that he was caused to fall 30 feet from the water tank ladder when the gooseneck bolted to the ladder broke. Plaintiff further points to his testimony that he was not provided with a safety harness, netting or scaffolding to protect him from the force of gravity while performing work on the tank. Thus, plaintiff maintains that his injuries were caused by a violation of Labor Law § 240 (1) based upon the fact that his fall was caused by the failure of the ladder on which he was standing and the failure to provide him with any of the safety devices enumerated under the statute.
In further support of his motion for summary judgment under his Labor Law § 240 (1) claim, plaintiff submits an expert affidavit by Robert Heller, Jr. P.E., a licensed and registered professional engineer specializing in construction site safety with over 45 years of experience in the field. In his affidavit, Mr. Heller avers that, given the height at which plaintiff was working, he should have been provided with a safety harness and lanyard, netting, or a scaffold around the entire perimeter of the tank and the failure to provide plaintiff with such safety devices was a violation of Labor Law § 240 (1).
In opposition to plaintiff's motion, and in support of their own respective motions for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim, Ownership Defendants/Schur and Allstate raise the identical argument. In particular, the defendants point to the undisputed fact that the ladder from which plaintiff fell was permanently affixed to the support structure and tank. According to the moving defendants, given this evidence, plaintiff's Labor Law § 240 (1) must be dismissed based upon appellate case law holding that permanent staircases and permanently affixed ladders from which a worker falls do not constitute safety devices which are intended to protect workers from elevation-related risks.
Labor Law § 240 (1) provides, in pertinent part, that:
All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, [or] altering . . . of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.
Labor Law § 240 (1) was enacted to "prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield an injured worker from [*8]harm directly flowing from the application of the force of gravity to an object or person" (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]). In order to accomplish this goal, the statute places the responsibility for safety practices and safety devices on owners, general contractors, and their agents who "are best situated to bear that responsibility" (id. at 500; see also Zimmer v Chemung County Perf. Arts, 65 NY2d 513, 520 [1985]). Further, "[t]he duty imposed by Labor Law § 240 (1) is nondelegable and . . . an owner or contractor who breaches that duty may be held liable for damages regardless of whether it has actually exercised supervision or control over the work" (Ross, 81 NY2d at 500).
Given the exceptional protection offered by Labor Law § 240(1), the statute does not cover accidents merely tangentially related to the effects of gravity. Rather, gravity must be a direct factor in the accident as when a worker falls from a height or is struck by a falling object (see Ross, 81 NY2d at 501; Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991]). In cases where a worker falls from a scaffold or ladder that is not shown to be defective, the issue of whether or not the ladder or scaffold provided adequate protection under the statute is for the jury to determine (see Mora v 1-10 Bush Terminal Owner, L.P., 214 AD3d 785, 786 [2d Dept 2023]; Esquivel v 2707 Creston Realty, LLC, 149 AD3d 1040, 1041 [2d Dept 2017]; Melchor v Singh, 90 AD3d 866, 868 [2d Dept 2011]). However, evidence that the ladder or scaffold collapsed, shifted, broke, or otherwise failed is sufficient to make a prima facie showing of a Labor Law § 240 (1) violation (see Exley v Cassel Vacation Homes, Inc., 209 AD3d 839, 841 [2d Dept 2022]; Debennedetto v Chetrit, 190 AD3d 933, 936 [2d Dept 2021]). This includes falls from defective permanently affixed ladders that provide the only means of access to the work area (see Valentin v Stathakos, 228 AD3d 985, 989 [2d Dept 2024]; Garcia v Church of St. Joseph of the Holy Family of the City of NY, 146 AD3d 524, 525 [1st Dept 2017]; Priestly v Montefiore Med. Ctr./Einstein Med. Ctr., 10 AD3d 493, 494-495 [1st Dept 2004]).
Here, plaintiff has submitted evidence in the form of his sworn deposition testimony which demonstrates that he fell a distance of 30 feet while performing demolition/construction work on a rooftop water tank when a gooseneck railing that he was holding onto broke. Plaintiff's testimony further demonstrates that the gooseneck was bolted to the top of a permanently affixed ladder that provided the only means of access to the work area. As such, the gooseneck constituted an extension of the ladder itself and the failure of this component constituted prima facie evidence of a Labor Law § 240 (1) violation. Accordingly, the burden shifts to the defendants to raise a triable issue of fact regarding whether or not the accident was caused by a Labor Law § 240 (1) violation.
Defendants have failed to meet this burden. The fact that the ladder was permanently affixed to the support structure and tank is insufficient to defeat plaintiff's Labor Law § 240 (1) cause of action or raise a triable issue of fact regarding their liability under the statute. In particular, as noted above and contrary to defendants' argument, when a permanently affixed ladder provides the only means of access to the work area, it is considered to be a safety device under the statute. Here, it is undisputed that the ladder from which plaintiff fell provided the only means of access to the water tank. Furthermore, given the fact that plaintiff fell when the gooseneck (either in whole or in part) broke off the ladder, plaintiff has demonstrated that the device was defective and otherwise inadequate to protect him from the force of gravity as required under Labor Law § 240 (1) (see Valentin, 228 AD3d at 989; Garcia, 146 AD3d at 525).
Accordingly, that branch of plaintiff's motion which seeks summary judgment against Ownership Defendants/Schur and Allstate under his Labor Law § 240 (1) cause of action is [*9]granted. Those branches of Ownership Defendants/Schur and Allstate's respective motions which seek summary judgment dismissing plaintiff's Labor Law § 240 (1) cause of action are denied.

Plaintiff's Labor Law § 241 (6) Claim
Plaintiff moves for summary judgment against Ownership Defendants/Schur and Allstate under his Labor Law §241 (6) cause of action. At the same time, Ownership Defendants/Schur and Allstate move to dismiss this claim. In support of this branch of his motion, plaintiff maintains that his injuries were caused by a violation of New York State Industrial Code provision 12 NYCRR 23-1.22 (c) (2) as a matter of law. Further, although he does not move for summary judgment based upon alleged violations of 12 NYCRR 23-1.21 (b) (3) (i), (ii), and (iv) and 23-1.24 (a) and (b), plaintiff does argue that there are issues of fact regarding whether or not his injuries were caused by violations of these provisions, which requires that defendants' respective motions for summary judgment dismissing his Labor Law § 241 (6) claim be denied.
In opposition to this branch of plaintiff's motion, and in support of their own respective motions for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim, Ownership Defendants/Schur and Allstate argue that all of the Industrial Code regulations which plaintiff alleges were violated are either inapplicable or too general to support a claim under the statute. The defendants also contend that plaintiff may not rely upon a violation of 23-1.22 (c) (2) because he did not allege a violation of this provision in any of his pleadings. In any event, the defendants argue that this Industrial Code regulation is not applicable given the circumstances of the accident.
Labor Law § 241(6) provides, in pertinent part, that:
All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to persons employed therein or lawfully frequenting such places.
Labor Law § 241(6), which was enacted to provide workers engaged in construction, demolition, and excavation work with reasonable and adequate safety protections, places a nondelegable duty upon owners and general contractors, and their agents to comply with the specific safety rules set forth in the Industrial Code (see Ross, 81 NY2d at 501-502). Accordingly, in order to support a cause of action under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision that is applicable given the circumstances of the accident, and sets forth a specific standard of conduct rather than a mere reiteration of common-law principals (see id. at 502; Ares v State, 80 NY2d 959, 960 [1992]; see also Reyes v Arco Wentworth Mgt. Corp., 83 AD3d 47, 53 [2d Dept 2011]).
As a preliminary matter, plaintiff does not oppose the defendants' motions for summary judgment dismissing his Labor Law § 241 (6) claim to the extent that it is based upon violations of 12 NYCRR 23-1.7 (b) and (f), 23-1.15, 23-1.16, 23-1.21 (c), (d), (e), and (f), and 23-1.24 (c). Accordingly, to the extent that it is premised upon violations of these Industrial Code provisions, those branches of Ownership Defendants/Schur and Allstate's respective motions which seek summary judgment dismissing plaintiff's Labor Law § 241 (6) cause of action are granted.
With respect to the alleged violation of 12 NYCRR 23-1.22 (c) (2), the court initially [*10]notes that, contrary to defendants' contention, the fact that plaintiff did not allege a violation of this provision in his pleadings does not preclude him from relying upon it in support of his motion for summary judgment. It is well-settled that a plaintiff may allege an Industrial Code violation for the first time in opposition to a summary judgment motion so long as it raises no new theories of liability and does not prejudice the defendant (see Doto v Astoria Energy II, LLC, 129 AD3d 660, 664 [2d Dept 2015]). It is equally well-settled that summary judgment may be awarded on an unpleaded cause of action if the opposing party is not prejudiced and the proof supports such an award (see Boyle v Marsh & McLennan Cos., Inc., 50 AD3d 1587, 1588 [4th Dept 2008], lv denied 11 NY3d 705 [2008]). Accordingly, the court sees no reason why plaintiff may not rely upon an alleged violation of 23-1.22 (c) (2) since it does not raise any new theories of liability and defendants have had a full and fair opportunity to oppose the motion.
Turning to the merits, 12 NYCRR 23-1.22 (c) (2), which pertains to platforms, provides in pertinent part that "[e]very platform more than seven feet above the ground, grade, floor or equivalent surface shall be provided with a safety railing constructed and installed in compliance with this Part [rule] on all sides except those used for loading and unloading." Plaintiff contends that the violation of this regulation proximately caused his accident inasmuch as the water tank constituted a platform that was more than seven feet above the roof and was not equipped with a safety railing that would have prevented his fall. In opposition to plaintiff's argument, Ownership Defendants/Schur maintain this provision is not applicable since plaintiff fell from the area where the top of the ladder met the trap door, and the placement of a railing in this area would have prevented the loading of workers and equipment into the tank. In addition, Allstate argues that this regulation is inapplicable since the water tank did not constitute a platform.
12 NYCRR 23-1.22 (c) (2) is sufficiently specific to support a Labor Law § 241 (6) cause of action (see Silvas v Bridgeview Investors, LLC, 79 AD3d 727, 732 [2d Dept 2010). However, given the circumstances of the accident, this regulation is not applicable herein. Specifically, the water tank, with its conical-shaped roof, did not constitute a platform to which a safety railing could be attached. Further, even if the water tank did constitute a platform, the regulation does not require a safety railing on the sides of platforms used for loading and unloading, as a safety railing would interfere with such operations. Here, plaintiff fell from the area where the top of the ladder met the trap door in the conical that provided access to the interior of the tank. Thus, the placement of a safety railing in this area would have interfered with the movement of people and materials passing into and out of the water tank.
With respect to the remaining Industrial Code provisions at issue, 12 NYCRR 23-1.21 (b) (3) (i), (ii), and (iv) prohibits the use of any ladder if it has a broken part, if it has any insecure joints between members or parts, and if it has any flaw or defect of material that may cause ladder failure. Here, plaintiff maintains that issues of fact exist regarding whether his accident were caused by violations of these provisions inasmuch as the goosenecks, which were permanently attached to the ladder, formed a component of the ladder which broke and otherwise failed. In opposition to plaintiff's contention, and in support of their own motion for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim, Ownership Defendants/Schur argue that these provisions are inapplicable because plaintiff's accident involved the failure of a gooseneck, not a ladder. For its part, Allstate contends that none of these provisions were applicable since plaintiff testified that he used the ladder prior to the accident and did not notice any defect involving the ladder or goosenecks.
12 NYCRR 23-1.21 (b) (3) (i), (ii), and (iv) are sufficiently specific to support a Labor [*11]Law § 241 (6) cause of action (see Melchor v Singh, 90 AD3d 866, 870-871 [2d Dept 2011]). Furthermore, contrary to Ownership Defendants/Schur's argument, given the fact that the goosenecks were permanently affixed to the ladder, they effectively formed a component of the ladder so as to fall under the protection of these Industrial Code provisions. Finally, given the evidence that one of the goosenecks broke off the ladder, there are issues of fact regarding whether or not the ladder had a broken part, an insecure joint between parts, and/or a flaw or defect of material that caused the ladder's gooseneck to fail.
As a final matter, plaintiff maintains that he has a viable Labor Law § 241 (6) cause of action to the extent that he relies upon violations of 12 NYCRR 23-1.24 (a) and (b). Section 23-1.24(a) requires the use of roofing brackets and crawling boards in order to protect individuals working on sloped roofs. 12 NYCRR 23-1.24(b) requires that scaffolds with platforms be installed not more than two feet beneath the eave of a roof when individuals are working on high steep roofs with a slope greater than one in four. Here, plaintiff maintains that there are issues of fact as to whether these regulations were violated inasmuch as the conical of the water tank that he was working on was sloped and none of the safety protections required in the regulations, which would have prevented his fall, were in place.
In opposition to plaintiff's argument, and in support of their own summary judgment motion dismissing plaintiff's Labor Law § 241 (6) claim to the extent that he relies upon violations of 23-1.24 (a) and (b), Ownership Defendants/Schur maintain that these regulations are not applicable. In particular, these defendants note that plaintiff was working on a water tank at the time of the accident, not a roof. Ownership Defendants/Schur also argue that, to the extent that the conical constituted a sloped roof for purposes of these regulations, plaintiff was not standing on the conical at the time he fell. Allstate also argues that these regulations are inapplicable since the accident involved a fall from a ladder affixed to a water tank, and had nothing to do with the roof of the building.
12 NYCRR 23-1.24 (a) and (b) are sufficiently specific to support a Labor Law § 241 (6) claim (see Perri v Gilbert Johnson Enter. Ltd., 14 AD3d 681, 684 [2d Dept 2005]). However, neither one of these regulations is applicable here given the circumstances of the accident. In particular, these provisions require certain safety equipment including scaffolding, roofing brackets, and crawling boards, which are intended to prevent workers from falling off sloped roofs. Here, to the extent that the conical constituted the type of sloped roof implicated by these regulations, it is undisputed that plaintiff was not standing on the sloped conical at the time he fell. Rather, he was standing with one foot on the water tank's flat, and the other foot on the top of the ladder.
Accordingly, that branch of plaintiff's motion which seeks summary judgment against Ownership Defendants/Schur and Allstate under his Labor Law § 241 (6) cause of action is denied. Those branches of Ownership Defendants/Schur and Allstate's respective motions which seek summary judgment dismissing plaintiff's Labor Law § 241 (6) claim are denied to the extent that plaintiff relies upon violations of 12 NYCRR 23-1.21 (b) (3) (i), (ii) and (iv)and granted with respect to the remaining Industrial Code provisions which plaintiff alleges were violated.

Plaintiff's Labor Law § 200/Common-Law Negligence Claims
Ownership Defendants/Schur and Allstate separately move to dismiss plaintiff's Labor Law § 200 and common-law negligence claims against them. In so moving, the defendants raise [*12]the identical arguments. In particular, the defendants maintain that it is clear from plaintiff's own deposition testimony that they did not exercise any control or supervision over his work and were not present on the roof at any time while plaintiff was performing the work. In addition, the defendants argue that they did not create or have notice of any defect involving the ladder or gooseneck. In support of this latter contention, Ownership Defendants/Schur note that plaintiff testified that he did not notice anything wrong with the ladder or goosenecks until the time of the accident.
In opposition to these branches of Ownership Defendants/Schur and Allstate's respective motions, plaintiff does not dispute that these parties did not control or supervise his work. However, plaintiff maintains that there are issues of fact regarding whether or not the ladder and attached goosenecks were defective given his testimony that one of the goosenecks broke off. In addition, plaintiff argues that the moving defendants have failed to make a prima facie showing that they lacked constructive notice of this defect.[FN4]

Labor Law § 200 is merely a codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (see Chowdhury v Rodriguez, 57 AD3d 121, 127-128 [2d Dept 2008]). Liability for causes of action sounding in common-law negligence and for violations of Labor Law § 200 is limited to those who exercise control or supervision over the plaintiff's work or who have actual or constructive notice or otherwise created the unsafe condition that caused the underlying accident (see Bradley v Morgan Stanley & Co., Inc., 21 AD3d 866, 868 [2d Dept 2005]; Aranda v Park East Constr., 4 AD3d 315 [2004]; Akins v Baker, 247 AD2d 562, 563 [2d Dept 1998]). Specifically, "[w]here a premises condition is at issue, property owners [and contractors] may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident" (Ortega v Puccia, 57 AD3d 54, 61 [2d Dept 2008]). However, "[w]hen a defect is latent and would not be discoverable upon a reasonable inspection, constructive notice may not be imputed" (Schnell v Fitzgerald, 95 AD3d 1295, 1295 [2d Dept 2011]).
"A defendant has the authority to supervise or control the work for purposes of Labor Law § 200 when that defendant bears the responsibility for the manner in which the work is performed" (Ortega, 57 AD3d at 62). "Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work. General supervisory authority to oversee the progress of the work is insufficient to impose liability. If the challenged means and methods of the work are those of a subcontractor, and the owner or contractor exercises no supervisory control over the work, no liability attaches under Labor Law § 200 or the common law" (LaRosa v Internap Network Serv. Corp., 83 AD3d 905, 909 [2d Dept 2011]).
Here, to the extent that plaintiff's accident may be deemed to have arisen out of the means and methods plaintiff used in rebuilding the water tank, Ownership Defendants/Schur and Allstate have made a prima facie showing of their entitlement to summary judgment dismissing [*13]plaintiff's Labor Law § 200 and common-law negligence claims by pointing to the deposition testimony of their witnesses, as well as plaintiff's own deposition testimony, all of which show that they did have any specific supervisory authority over plaintiff's work. Indeed, plaintiff has effectively conceded this point in his opposition papers.
To the extent that the accident arose out of a dangerous condition in the form of a defect in the gooseneck that broke, defendants have made a prima facie showing that they did not create or have actual notice of any defect in the gooseneck. Further, these defendants have also made a prima facie showing that they may not be charged with constructive notice of any such defect by pointing to plaintiff's own deposition testimony. In particular, plaintiff testified that he worked both on and in close proximity to the goosenecks for several hours prior to the accident and did not notice any problems with them. Specifically, plaintiff testified that when he climbed the ladder before the accident, he used the gooseneck to get into the tank and didn't notice any problems with the gooseneck. Plaintiff further testified that he did not notice anything wrong at the point where the gooseneck was bolted to the ladder prior to the accident. Finally, plaintiff testified that when he grabbed the gooseneck immediately prior to the accident, it felt firm. The fact that plaintiff, who had 15 years of experience as a laborer and carpenter building and repairing water tanks for Rosenwach, did not detect any problems with the goosenecks prior to the accident is sufficient to demonstrate that a reasonable inspection would not have revealed the defect that caused the gooseneck to fail.
In opposition to the defendants' prima facie showing, plaintiff has failed to submit sufficient evidence to raise a triable issue of fact regarding whether or not a reasonable inspection would have uncovered the defect in the gooseneck. In this regard, plaintiff submits photographs which purport to show that the ladder was in a decaying condition. However, none of these photographs indicate that the goosenecks were decaying, and the components of the ladder that are depicted in the photographs did not fail.
Accordingly, those branches of Ownership Defendants/Schur and Allstate's respective motions which seek summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence causes of action are granted.

Cross-Claims Against Ownership Defendants/Schur
Ownership Defendants/Schur move for summary judgment dismissing Allstate's cross-claims against them. In support of this branch of their motion, Ownership Defendants/Schur maintain that there is no basis for Allstate's common-law indemnity and contribution cross-claims against them since the accident was not caused by any negligence on their part. In addition, Ownership Defendants/Schur argue that Allstate's contractual indemnity claims against them must be dismissed since there was no contract relating to the work between Ownership Defendants and Allstate and the contract between Schur and Allstate did not contain an indemnification provision.
In opposition to this branch of Ownership Defendants/Schur's motion, Allstate maintains that there are issues of fact regarding whether or not Ownership Defendants/Schur were negligent in failing to correct a defect in the gooseneck of which they had constructive notice. Accordingly, Allstate contends that Ownership Defendants/Schur's motion for summary judgment dismissing its common-law indemnity cross-claim must be denied.
The right to contractual indemnification is dependent upon the specific language in the contract (see Reisman v Bay Shore Union Free School Dist., 74 AD3d 772, 773 [2d Dept 2010]). [*14]In this regard, the obligation to indemnify should only be found where it is clearly indicated in the language in the contract (see George v Marshalls of MA, Inc., 61 AD3d 925, 930 [2d Dept 2009]). Finally, a party seeking contractual indemnification must demonstrate that it was free of negligence since a party may not be indemnified for its own negligent conduct (see General Obligations Law § 5-322.1; Cava Constr. Co., Inc. v Gaeltec Remodeling Corp., 58 AD3d 660, 662 [2d Dept 2009]).
Here, it is undisputed that there was no contract between Ownership Defendants and Allstate pertaining to the work that plaintiff was performing at the time of the accident. Thus, there is no basis for Allstate's contractual indemnification claim against Ownership Defendants. Further, while there was a contract between Allstate and Schur regarding the work performed by plaintiff, it is undisputed that this contract did not contain an indemnification provision. Accordingly, that branch of Ownership Defendants/Schur's motion which seeks summary judgment dismissing Allstate's contractual indemnity cross-claim against them is granted.
"A party can establish its prima facie entitlement to judgment as a matter of law dismissing a cause of action for common-law indemnification, arising out of a workplace injury asserted against it by establishing that it was not negligent, and that it did not have the [ability] to direct, supervise, or control the work giving rise to the injury" (Council on Foreign Relations, Inc. v ABC Interiors Unlimited, Inc., 189 AD3d 1168, 1168 [2d Dept 2020]). Here, the court has already determined that the accident was not caused by any negligence on the part of Ownership Defendants or Schur. Accordingly, that branch of Ownership Defendants/Schur's motion which seeks summary judgment dismissing Allstate's common-law contribution and indemnity claims is granted.

Third-Party Claims and Cross-Claims Against Allstate
Allstate moves for summary judgment dismissing Ownership Defendants/Schur's third-party claims and cross-claims against it, including all contractual indemnification, common-law indemnification and breach of contract claims. In support of this branch of its motion, Allstate points out that there are no provisions in the contract between it and Schur which required that Allstate procure liability insurance covering Ownership Defendants/Schur or that Allstate indemnify these defendants for accidents arising out of the work on the water tank. In addition, Allstate contends that there is no basis for any common-law indemnification claims against it since the accident was not caused by any negligence on its part.
In opposition to this branch of Allstate's motion, Ownership Defendants/Schur argue that Allstate has failed to meet its prima facie burden in moving for summary judgment dismissing the third-party claims and cross claims asserted against it. Ownership Defendants/Schur also contend that there are issues of fact regarding whether or not Allstate had actual or constructive notice of the defective gooseneck which require the denial of its motion to dismiss the common-law indemnity claims asserted against it.
Contrary to Ownership Defendants/Schur's contention, Allstate has made a prima facie showing of its entitlement to summary judgment dismissing all contractual indemnification and breach of contract claims against it by submitting a copy of the contract between Allstate and Schur which lacks any provisions requiring that Allstate indemnify or obtain liability insurance covering Ownership Defendants or Schur. Further, the court has already determined that the accident was not caused by Allstate's negligence. Accordingly, that branch of Allstate's motion which seeks summary judgment dismissing Ownership Defendants/Schur's common-law [*15]indemnity, contractual indemnity, and breach of contract claims against it is granted.

Summary
In summary, the court rules as follows: (1) That branch of plaintiff's motion, in mot. seq. 27, which seeks summary judgment against Ownership Defendants/Schur and Allstate under his Labor Law § 240 (1) cause of action is granted. That branch of plaintiff's motion which seeks summary judgment against Ownership Defendants/Schur and Allstate under his Labor Law § 241 (6) cause of action is denied. (2) That branch of Ownership Defendants/Schur's motion, in mot. seq. 28, which seeks summary judgment dismissing plaintiff's Labor Law § 240 (1) cause of action is denied. That branch of Ownership Defendants/Schur's motion which seeks summary judgment dismissing plaintiff's Labor Law § 241 (6) cause of action is denied to the extent that plaintiff relies upon violations of 12 NYCRR 23-1.21 (b) (3) (i), (ii), and (iv), and granted with respect to the remaining Industrial Code provisions that plaintiff alleges were violated. That branch of Ownership Defendants/Schur's motion which seeks summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims against them is granted. That branch of Ownership Defendants/Schur's motion which seeks summary judgment dismissing Allstate's contractual and common-law indemnification cross-claims against them is granted. (3) That branch of Allstate's motion, in mot. seq. 29, which seeks summary judgment dismissing plaintiff's Labor Law § 240 (1) cause of action is denied. That branch of Allstate's motion which seeks summary judgment dismissing plaintiff's Labor Law § 241 (6) cause of action is denied to the extent that plaintiff relies upon violations of 12 NYCRR 23-1.21(b)(3)(i), (ii), and (iv), and granted with respect to the remaining Industrial Code provisions that plaintiff alleges were violated. That branch of Allstate's motion which seeks summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims against it is granted. That branch of Allstate's motion which seeks summary judgment dismissing Ownership Defendants/Schur's contractual indemnification, common-law indemnification, and breach of contract cross-claims and third-party claims against it is granted.
This constitutes the decision and order of the court.
E N T E R
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:In their notice of motion, Ownership Defendants/Schur indicate that they are moving for summary judgment under their third-party claims and cross-claims against Allstate. However, the motion itself actually seeks summary judgment dismissing Allstate's cross-claims against them.

Footnote 2:There is conflicting evidence regarding what prompted the work on the water tank. In particular, Robert Gethard, a commercial property manager employed by Schur, testified that Allstate found a leak in the tank during a monthly inspection. However, the building superintendent, Ernesto Gonzalez, testified that the NYFD determined during an inspection that the tank's cover was damaged and issued a violation, which he forwarded to Mr. Gethard. Finally, Allstate's president and chief executive officer, Adam Goodrich, testified that Allstate did not perform inspections on the tank.

Footnote 3:Allstate argued in its opposition papers to plaintiff's original cross-motion for summary judgment against it that the cross-motion was untimely. However, this issue was not addressed by the court since the cross-motion was denied (without prejudice) based upon the failure to comply with the court's Part Rules. Accordingly, the court must address this issue now.

Footnote 4:Allstate also opposes Ownership Defendant/Schur's motion to dismiss plaintiff's Labor Law § 200/common-law negligence claims against them. In particular, Allstate argues that these defendants failed to demonstrate that they lacked constructive notice of the defective gooseneck.